**In re Sidney R. CLARK a/k/a Sidney R. Clarke, Debtor.**

**Bankruptcy No. 84–00880K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 10, 1987.

Alvin Freiberg, Philadelphia, Pa., for debtor.

Kenneth F. Carobus, Philadelphia, Pa., for Systran.

Dale H. Schofield, Portland, Or., Oregon Counsel for Systran Financial Services.

James N. Esterkin, Portland, Or., for debtor/plaintiff.

James J. O'Connell, Philadelphia, Pa., Chapter 13 standing trustee.

SUPPLEMENTAL OPINION SUR MOVANT'S MOTION FOR RECONSIDERATION TO AMEND OR MAKE ADDITIONAL FINDINGS OF FACT, TO ALTER OR AMEND JUDGMENT AND FOR NEW TRIAL

DAVID A. SCHOLL, Bankruptcy Judge.

On February 19, 1987, SYSTRAN FINANCIAL SERVICES CORP., the Movant in a Motion to Obtain relief from the automatic stay imposed by the Debtor's Chapter 13 bankruptcy filing in this case (and referred to hereinafter as "the Movant"), served upon Counsel for the Debtor and filed in this Court, on the following day, a timely Motion, pursuant to Bankruptcy Rule (hereinafter referred to as "Bankr. R.") 9023 and Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ.

P.") 52(b), 59(b) and 59(e),[1] "for Reconsideration, to Amend or Make Additional Findings of Fact, to Alter or Amend Judgment and for New Trial" in reference to our Opinion and Order of February 10, 1987, in this matter, reported at 69 B.R. 885 (Bankr. E.D.Pa.1987), in which we not only denied relief to the Movant, but also ordered it to terminate a proceeding which we found that it had instituted against the Debtor in violation of the automatic stay in aid of execution of a federal court judgment obtained against the Debtor in the District of Oregon. In the Order Requiring Answer, the Movant included a sentence, admittedly overlooked by us in executing same on February 20, 1987, providing that "[a]ll proceedings to stay pending ruling on this Motion."

The substance of the instant Motion was that this Court failed to appreciate the impact of 11 U.S.C. § 1327, particularly subsection (b) thereof, which provides as follows, in its Opinion:

> Sec. 1327. Effect of confirmation.
>
> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate of the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

The Movant accurately points out, as per Finding of Fact 4 of the February 10, 1987, Opinion, 69 B.R. at 887, that, not only was the Movant's debt a post-petition obligation, but the Debtor's Plan had been confirmed before the debt even arose. Thus, argues the Movant, the Debtor's property, by force of 11 U.S.C. § 1327(b), re-vested in the Debtor and ceased being "property of the estate" prior to the time that the claim arose. Therefore, it claims that that aspect of the stay arising as to post-petition claims regarding "property of the estate," 11 U.S.C. § 362(a)(3) and (a)(4), was not, as the Court found, in effect.[2]

A hearing on the instant Motion was scheduled before us on March 25, 1987. At that time, we learned that the Debtor had, in the mean time, signed an Agreement to sell his residential realty at 1555 Coolidge Avenue, Abington, Montgomery County, Pennsylvania, and that settlement was scheduled for that very day. We also learned that (1) Settlement would probably be frustrated by the presence of the Movant's Montgomery County, Pennsylvania lien, which, pursuant to the stay in our Order of February 20, 1987, remained of record; (2) The Debtor did not anticipate receiving any proceeds from the sale, in any event, due to the presence of liens sufficient to consume the Debtor's equity, even if the Movant's lien was removed.

Given this turn of events, we scheduled a conference with Counsel on March 30, 1987, and urged them to spur their respective clients to come to a mutually-agreeable compromise to resolve this matter. On April 3, 1987, Counsel reported that they had agreed that the lien would be cleared from the Coolidge Avenue property in order that the sale could go through, but that

---

**1.** In its Motion, the Movant specifically stated that it invoked "Bankruptcy Rules 7052(b), 8002(b) and 9003," in addition to F.R.Civ.P. 52 and 59. Actually, there is no Bankr.R. 7052(b) nor 9033, and Bankr.R. 8002(b) merely addresses the impact of various post-trial Motions on the appeal period. However, we believe that the reference to Bankr.R. 9033 rather than 9023 was probably a typographical error and that the Motion is timely under Bankr.R. 9023 and the above federal rules, per our decision in *In re Campfire Shop, Inc., Barone v. Strouse, Green-* *berg Mortgage Co.,* 71 B.R. 521, 523–24, (Bankr.E.D.Pa., 1987).

**2.** We note that none of these arguments were advanced by the Movant prior to our decision of February 10, 1987. In fact, except by incorporation of pleadings filed in the Oregon case, the Movant, prior to our decision, apparently failed to appreciate the significance of the fact that both its judgment and claim were post-petition.

the parties were unable to agree as to whether the lien should be stricken or maintained in place, presumably to attach to any other realty that the Debtor would acquire in Montgomery County or to serve as the basis for execution on any other property of the Debtor in that jurisdiction.

The final resolution of this matter is therefore thrust back upon us, despite that it is now apparent to all involved that the stakes are not very high, as the Debtor has virtually no assets of value from which the Movant will be able to realize collection of its judgment.

We agree that the Movant's argument has some logical appeal. However, although we did not address the issue, we did consider the impact of § 1327(b) before we rendered our decision, although, like the parties,[3] we did not address it. We decided, at that time, that the contents of 11 U.S.C. § 1306, which provides as follows, militated against the Movant's contention that "property of the estate" lost its status as such upon the confirmation of the Debtor's plan:

Sec. 1306.   Property of the estate.

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

We must confess that we find neither § 1327(b) or § 1306 to be models of clarity, and we can think of policy reasons for either of two interpretations of what happens to "property of the estate" upon confirmation: (1) It continues being such until the case is closed, dismissed, or converted to another Chapter; or (2) It ceases being such at the time of confirmation and forever after, unless the debtor, in his Plan, per § 1327(c), provides otherwise.

Regarding the wording of the two Code sections in issue, we begin by observing that § 1306(a)(1) suggests that the "property of the estate" at filing, and thereafter added to it post-filing, remains as such until closing, dismissal, or conversion of the case. However, this conclusion is undermined to some degree by § 1306(b), which "excepts" the conclusion that the Debtor remains in possession from a situation where there is a confirmed Plan. This might suggest a reference to § 1327(b) to determine what happens to "property of the estate" when a Plan is confirmed. And, § 1327(b) states that, on confirmation, all of the "property of the estate" "vests" in the debtor. In one sense, it can be argued that this means that, at that point, the "property of the estate," vesting in the Debtor, is "property of the estate" no more. However, when it is considered at more length, it can be concluded that § 1327(b) raises additional conceptual questions, notably the following: (1) If "property of the estate" effectively disappears at confirmation, it is not improper to state that it "vests" anywhere? (2) If Congress meant to say that property of the estate ceases to exist as such at the time of confirmation, why did it not simply say so, instead of introducing the metaphysical concept that something that has disappeared "vests" in anyone?

We can also conceive of policy reasons which point in opposite directions. In one sense, it seems unfair that post-petition creditors, many of whose claims, like that of the Movant here, arise out of debts which are neither taxes nor consumer debts, and hence cannot be the subject of proofs of claim, see 11 U.S.C. § 1305(a), are in any way stymied in attempting to collect their debts. Carrying this concept too far

---

**3.**   See page 748, note 2 *supra.*

may make a Chapter 13 post-confirmation debtor a credit pariah, with whom no person informed of his status would deal. On the other hand, a debtor who is making his best financial effort to pay all of his creditors equally under a Chapter 13 Plan should not have his scarce resources and "property of the estate" invaded and the Plan doomed to failure because of a claim from an upstart post-petition creditor. This concept is magnified here by the equities in favor of the Debtor, which we acknowledged in our Opinion of February 10, 1987. See 69 B.R. at 893 n. 2.

Various courts have struggled with the apparent conflicts between the concepts and policies set forth herein and the ambiguity between § 1306 and § 1327(b), most notably in *In re Mason*, 51 B.R. 548 (D.Ore. 1985); and *In re Root*, 61 B.R. 984 (Bankr. D.Colo.1986). Not surprisingly, perhaps, the courts meeting these issues head-on reach diametrically different results, with *Mason* resolving the conflict in favor of the post-petition creditor, and *Root* holding, in rather picturesque language, directly and decisively to the contrary.[4]

We note that several cases, including a decision by this Court's venerable former Chief Judge, Emil F. Goldhaber, in *In re Johnson*, 51 B.R. 439, 442 (Bankr.E.D.Pa. 1985), have implicitly followed *Mason*, by reference to § 1327(b), but without acknowledging the conflict between that section and § 1306. *See In re Dickey*, 64 B.R. 3, 4 (Bankr.E.D.Va.1985); *In re Severson*, 53 B.R. 8, 10 (Bankr.D.Ore.1985); *In re Korgan*, 52 B.R. 557, 558 (Bankr.D.Ore. 1985); and *In re Johnson*, 36 B.R. 958, 959 (Bankr.D.Utah 1983). We do note an almost uncanny congregation of these cases in the courts of Oregon, including *Mason, supra*, which is coincidental with the fact that it was the resort of the Movant here to Oregon courts which set all of the strange wheels turning here into motion.

Despite the number of authorities in the opposite direction, we are inclined to accept the reasoning of the *Root* case. However,

our examination of the pertinent authority and further consideration of the competing policies involved causes us to soften one aspect of the holding in our Opinion of February 10, 1987. We believe that a party standing in the shoes of the Movant should have a relatively slight burden to overcome to obtain relief from the automatic stay prospectively. Otherwise, as we indicated above, a post-petition creditor, even one holding, as here, a valid judgment against a debtor, would be unfairly frozen in place until the debtor, in leisurely fashion, completes his Plan payments and is discharged. The equities in favor of the Movant here are few, in our view, but one of them is that it is unfair for the Debtor, having been "re-vested" with his "property of the estate," to be able to sell his most valuable asset, his residential realty, but the Movant, at the same time, to be unable to touch it. In sum, the prospect of the Debtor's selling his property out from under the Movant is, in our view, sufficient "cause" to justify prospective relief from the automatic stay, per 11 U.S.C. § 362(d)(1).

As we indicate above, the equities of the situation before us still appear to us to be largely with the Debtor. We shall therefore not alter any portion of our Opinion of February 10, 1987, except its last two paragraphs and shall not alter any of our Order except the first paragraph. Furthermore, we shall give the Debtor an opportunity to "provide" for the Movant in his Plan, per § 1327(c), before allowing the Movant to re-institute execution process against the Debtor, because we believe that, until now, the Debtor had a right to assume that we rejected any argument that the Movant had a right to proceed against him. However, if the Debtor fails to do so on or before April 30, 1987, we shall allow the Movant to proceed. In this fashion, we believe that we will be doing justice to the rather fascinating competition of the interests of the parties here.

---

4. After expressing its acknowledgment but "strong disagree[ment]" with *Mason,* the *Root* court states that, if the "estate" ceases to exist after confirmation, then it follows that the

Trustee has nothing left to administer and that his post-confirmation role is that of "nothing more than a officious intermeddler." 61 B.R. at 985.

An Order consistent with the foregoing shall be entered.

## ORDER

AND NOW, this 10th day of April, 1987, it is hereby ORDERED AND DECREED as follows:

1. The Motion for Reconsideration to Amend or Make Additional Findings of Fact, To Alter or Amend Judgment and for New Trial in reference to our Opinion and Order of February 10, 1987, in this matter of SYSTRAN FINANCIAL SERVICES CORP. (hereinafter referred to as "the Movant") in this matter is GRANTED in part.

2. The final two paragraphs of our Opinion of February 10, 1987, are WITHDRAWN, and the first paragraph of our Order of February 10, 1987, is VACATED. However, in all other respects, the aforesaid Opinion and Order are REAFFIRMED.

3. The Movant shall proceed to terminate the Montgomery County action in aid of execution of its Oregon judgment, at No. 86–00838 within ten (10) days from the date of this Order.

4. The Debtor is accorded an opportunity to file an Amended Plan, pursuant to 11 U.S.C. §§ 1327(c) and 1329(a) to provide for the claim of the Movant, on or before April 30, 1987.

5. If the Debtor fails to amend his Plan as indicated in paragraph four *supra*, then the Movant is granted relief from the automatic stay to proceed in any manner it so chooses in any court of competent jurisdiction to collect its judgment obtained in the United States District Court for the District of Oregon, at Civil Action No. 85–569RE.