**In re James D. DOUGHERTY and Eileen M. Dougherty, Debtors.**

**Bankruptcy No. 85–02180G.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 30, 1987.

Irwin Trauss, Phila., Pa., for debtors.

Lawrence Phelan, Phila., Pa., for FNMA.

Edward Sparkman, Phila., Pa., Trustee.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

The following Order to be entered of record in this case is intended to effect an equitable resolution to this controversy. Given the Debtors' considerable equity in their home and the fact that they would be faced with loss of their home if we declined to enter an Order vacating our previous Order of January 28, 1987, granting the Motion of the Debtors' Mortgagee, FEDERAL NATIONAL MORTGAGE ASSOCIATION (hereinafter referred to as "FNMA"), to obtain relief from the automatic stay (hereinafter referred to as "the Stay Motion"), we have decided to grant the Debtors' Motion for Reconsideration of Our Order of January 28, 1987 (hereinafter "the Reconsideration Motion"); vacate the January 28, 1987, Order; and enter an Order which we believe we would have entered had the Debtors been present at the hearing and testified per the contents of the parties' Stipulation of Facts. We are fully empowered to do this because the Debtors timely served the Reconsideration Motion pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e). *See In re Campfire Shop, Inc.*, 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987). However, because the gross negligence of both the Debtors and their Counsel resulted in additional use of the resources of counsel for FNMA, we are ordering the Debtors and their counsel to pay reasonable counsel fees to FNMA's counsel. We also should note that, in our Order, we are requiring the Debtors to pay $200.00 monthly to FNMA, thus requiring them to pay an extra $65.00 monthly in addition to their regular $135.00 monthly mortgage payment, rather than an extra $30.00 monthly, as they requested.

We have several reasons for altering the Debtors' specific request and requiring them to pay $200.00, rather than $165.00, monthly payments to FNMA. First, we believe that they should repay the entire post-petition delinquency before they revert to remitting the regular monthly payment to FNMA, as opposed to merely the post-confirmation delinquency falling due since the confirmation of the Plan on September 4, 1986. Although only "cause" arising after confirmation may constitute a basis for granting relief from the automatic stay, *In re Ellis*, 60 B.R. 432, 434–35 (9th Cir. BAP 1985); and *In re Clark*, 38 B.R. 683, 684–85 (Bankr.E.D.Pa.1984), we believe that, there having been substantial post-confirmation default here, the Debtors can now adequately protect FNMA only by making up all of the post-petition delinquencies. We arrive at a $1,403.37 delinquency figure to be repaid by adding $135.00 (the missed February, 1987, payment) to the delinquency of $1,268.37 which it was established existed at the January 28, 1987, hearing. The parties' Stipulation is silent on the issue of the amount of the delinquency, and thus we had to interpolate as best we could.

If we allowed the Debtors to pay only $30.00 on the $1,403.37 balance, the delinquency would not be liquidated until after they had completed all of their Plan payments. On the other hand, the $65.00 monthly extra payments will liquidate the post-petition delinquency in twenty-two (22) months.

Secondly, we believe that the Debtors can afford this payment. When they filed their Plan on June 14, 1985, the Debtors' only income was public assistance, food stamps, and VA Disability payments totallying $995.40 monthly. The Stipulation reveals that the Husband-Debtor is now employed, and his net income of $280.00 weekly will yield net monthly income of $1,204.00. Thus, absorption of a $65.00 extra monthly payment, while not by any means an easy accomplishment, appears feasible.

■ Finally, we must observe that both the Debtors and their counsel, per the Stipulation, have admitted to gross negligence on both of their parts in allowing the January 28, 1987, Order to be entered after a hearing at which the Debtors were absent in the first place. It is commendable that both the Debtors and counsel candidly admit their own shortcomings, as they do in the Stipulation. However, although we are prone to be indulgent to human shortcomings, we believe that compensation to the party injured by the shortcomings is the just result. We further believe that, as a result of the conduct of the Debtors and their counsel, FNMA is entitled to receive both full compensation for all of the post-petition delinquencies and counsel fees of $500.00, as we believe that at least four hours of the time of FNMA's counsel has been expended as a result of the failure of the Debtors to appear and properly defend the Stay Motion at the January 28, 1987, hearing. We shall allocate this sum equally between the Debtors and their counsel, as we believe that these parties were equally at fault for the failure of the Debtors to appear.

Per the Stipulation of Facts, on December 22, 1986, the Debtors' Counsel sent the only letter which he ever dispatched to the Debtors advising them of the forthcoming hearing on the Stay Motion. The letter failed to note a date for the hearing, probably because it was not yet known to counsel and hence is understandable. However, what is *not* understandable is why counsel, who must have learned of the hearing date well prior to January 28, 1987, and whose records showed that the Debtors had no phone and were dependent on a neighbor as a go-between, never sent them another *letter* advising the Debtors of the hearing date. This error was compounded by the fact that the Debtors called counsel on numerous occasions, indicating their response to the letter and leaving their own new phone number, and the failure of the clerical personnel or the Debtors' counsel to accurately transmit or assimilate the message that the Debtor *had* a telephone of their own and what that number was. Thus, without that information, the *only*

attempt at notification of the Debtors of the date of the hearing by the Debtors' counsel was a call to the neighbor *on the day before the hearing*. With such high stakes, it would have been logical, in our view, to attempt a home visit to the Debtors. However, whether or not such a degree of diligence was necessary, the method of communication attempted was a risky means of accomplishing its purpose and predictably, failed, as the neighbor garbled the message and the Debtors' attempts to call counsel to get a clear explanation failed. Counsel was therefore, in our view, grossly negligent and must bear half of the financial responsibility to compensate FNMA's counsel.

However, we must observe that the Debtors were considerably less than vigilant also. Although they knew from the letter and their one contact with their counsel that a hearing on the Stay Motion was to be scheduled some time in January, they apparently made no effort to contact counsel until they received the garbled message from the neighbor on January 27, 1987. We believe that other attempts at communication—and a visit to counsel's office if other attempts appeared to fail— should have been made by vigilant Debtors with their home on the line when they failed to hear from their counsel. The sequence lends the inference that the Debtors had simply resigned themselves to loss of their home until the Husband-Debtor obtained employment, and may not have had a good-faith interest in appearing at the hearing on the Stay Motion on the originally-scheduled date of January 28, 1987. We therefore believe that the Debtors must share the burden of reimbursing FNMA's counsel.

We note that it is not our practice to liberally grant counsel fees to counsel for any party for services in bankruptcy court. As we held in *In re Tashjian*, 72 B.R. 968, 974–75 (Bankr.E.D.Pa.1987), we believe that such awards are contrary to the "American rule" that parties must bear their own counsel fees and hence that such awards are to be considered as "extraordinary dispensations" to be awarded in cases similar to the situation in *In re Durkalec*, 21 B.R. 618 (Bankr.E.D.Pa.1982), a debtor

seeks to revive an automatic stay that was terminated by valid Order. Even though FNMA's counsel, we surmise from a spirit of graciousness, has not asked for such an award (but has opposed the Motion), we shall, in granting the Debtors' Motion, award such fees to FNMA's counsel.

Our Order setting forth our result explained herein follows.

ORDER

AND NOW, this 30th day of June, 1987, upon consideration of the Stipulation of Facts on which the parties have agreed that this matter may be heard, the Debtor's Motion for a New Trial Pursuant to Bankruptcy Rule 9023 (hereinafter referred to as "the Reconsideration Motion") on the Motion of Federal National Mortgage Association (hereinafter referred to as "FNMA") for relief from the automatic stay (hereinater referred to as "the Stay Motion"), which we granted after hearing attended by the Debtors' counsel, but not the Debtors, on January 28, 1987, it is hereby ORDERED as follows:

1. The Reconsideration Motion is GRANTED.

2. Our Order of January 28, 1987, granting the Stay Motion is VACATED.

3. The automatic stay provided by Section 362 of the Bankruptcy Code shall be reinstated with respect to FNMA concerning the Debtors real estate located at 3421 Tilton Street, Philadelphia, Pennsylvania 19134.

4. This Order is entered upon the condition that the Debtors' performance in the future will include the following:

a. Payments of $200.00 directly to FMNA each month hereinafter, on or before the fifteenth (15th) day of each month, beginning in July, 1987, until the post-petition delinquency of $1,403.37 is liquidated, at which time payments shall revert to $135.00 per month.

b. Payments of at least the current amounts to the Trustee pursuant to the Plan, beginning in July, 1987.

c. Payment of an additional sum of Five Hundred ($500.00) Dollars to FNMA for counsel fees incurred due to the combined negligence of the Debtors' counsel and the Debtors in allowing the Order of January 28, 1987, to be entered, to be allocated in the amount of Two Hundred and Fifty ($250.00) Dollars each to the Debtors and the Debtors' counsel. The Debtors may pay their share of this sum either with their Plan or by a mutually-agreeable payment schedule established between the Debtors and FMNA outside of the Plan.

5. This Order is entered without prejudice to FNMA to relist its previous Stay Motion, or file a new Motion, upon written notice of at least ten (10) days to the Debtors and their Counsel that the Debtors have failed to comply with the terms of paragraph four (4) of this Order, and the failure of the Debtors to cure any default within this ten (10) day period.