In re Robert J. FORD, Debtor.

Bankruptcy No. 87–03063S.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 25, 1988.

---

Michael A. Cibik, John F. Gehring, Philadelphia, Pa., for debtor.

Edwin Seave, Philadelphia, Pa., for Secured Creditor.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

We herein consider a secured creditor's Objection to Confirmation of the Debtor's Plan on the ground that it impermissibly seeks to "modify" the creditor's rights by contemplating a "cure" of four post-petition payments totaling $400.00. We hold that, particularly in light of the fact that the last payment on the obligation underlying the creditor's claim is due prior to the final plan payment, the Plan, as proposed, does not violate any Code provision and can be confirmed.

The Debtor filed the instant Chapter 13 Petition on June 22, 1987. A Plan, contemplating payments to the Trustee of $175.00 monthly for forty-eight (48) months, was filed with the Petition.

The meeting of creditors pursuant to 11 U.S.C. § 341 was conducted on September 15, 1987. Prior thereto, on August 11, 1987, the creditor objecting to Confirmation, MID–PENN CONSUMER DISCOUNT COMPANY (hereinafter referred to as "the Objector"), filed a Proof of Claim seeking the sum of $768.63 "to be paid inside of Plan" and $2,942.00 "to be paid directly to Mid–Penn outside of Plan." The smaller figure apparently contemplated arrears, and the larger figure, the current balance on the underlying debt.

On September 2, 1987, the Objector filed the instant Objection to Confirmation, alleging that "the debtors [sic] have failed to make all ... post-petition payments" which the Plan purportedly called for. No Code provision was cited or invoked therein, and this document appears to be a form-pleading which we have observed that the Objector has filed verbatim in numerous cases.

The Debtor's response was to file an additional Secured Proof of Claim on behalf of the Objector on February 25, 1988, in the amount of $400.00. No objection has been filed to this Proof of Claim by the Objector.

On March 17, 1988, the matter was scheduled for a Confirmation Hearing, having been continued three times in the past. The Objector appeared and presented no testimonial evidence, but vigorous argument, that the Plan violated 11 U.S.C. § 1325(a)(1), in that it did not conform to the prohibitory language of § 1322(b)(2). In the course of the argument, the underlying mortgage between the Debtor and one Helen M. Ford and the Objector was produced. This document represented a mortgage which was not first in priority on the premises. It was dated October 22, 1985, and it required the obligors to make forty-eight (48) payments of $100.00 each, beginning on December 5, 1985, apparently in consideration for a consumer loan. Security taken included the obligors' residential realty, and also included the following:

all and singular the Buildings, Streets, Alleys, Passages, Ways, Waters, Water Courses, Rights, Liberties, Privileges, Improvements, Hereditaments and Appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the Reversions and Remainders, Rents, Issues and Profits thereof; and also together with all plumbing, heating ~~and lighting equipment or machinery~~ [1] now or hereafter installed upon the above described premises, notwithstanding any of such are capable of severance without harm to the real estate.

The parties stipulated that, between July, 1987, and March, 1988, nine (9) payments of $100.00 fell due to the Objector, but that the Debtor had paid only five (5) of them. For this reason, the Debtor filed the second Proof of Claim to pay the remaining four (4) payments under his Plan. Thus, the Debtor filed the Proof of Claim on the Objector's behalf in the amount of $400.00. The Standing Chapter 13 Trustee has advised us that the Plan was sufficiently funded as originally drafted to contain the additional Proof of Claim for $400.00 filed by the Objector and remain feasible. The Debtor has remitted payments to the Trustee in accordance with the Plan. Therefore, the Trustee does not oppose confirmation.

The Objector, as indicated below, relied strictly upon the prohibitory language of § 1322(b)(2) as the basis for its Objection. Resolution of the issue before us requires a careful analysis of §§ 1322(b)(2), (b)(3), and (b)(5), which provide as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default; ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

The analysis of the Objector is as follows. It holds a claim secured only by the Debtor's residential realty, bringing it within the category of claimants whose rights cannot be modified, pursuant to § 1322(b)(2). Arguing that the term "modify" in § 1322(b)(2) can be equated with the terms "curing any default" set forth in § 1322(b)(5), it contends that the Debtor cannot invoke § 1322(b)(5) because the last payment is due on its obligation before rather than after the final plan payment is due.

We shall assume, *arguendo*, the merits of the Objector's contention that § 1322(b)(2) applies at all in light of the fact that the Objector has taken security in reversions, remainders, rents, issues, profits, and certain fixtures, which may constitute a security interest in property other than *only* the debtor's residential realty. We do so only because we are willing to accept the Objector's contention that references to "lighting equipment or machinery" are crossed out, and all that remained secured were fixtures. Clearly, if the references to "lighting fixtures or machinery" had remained intact, the Objector's security interest would have been outside the scope of § 1322(b)(2). *See, e.g., In re Caster*, 77 B.R. 8, 11–12 (Bankr.E.D.Pa.1987); and *In re Jablonski*, 70 B.R. 381, 386 (Bankr.E.D. Pa.1987). As the passages in the above cases indicate, we are not convinced that *any* appendage to security in the realty only, including those definitely included in the mortgage here, does not take the security interest out of the scope of § 1322(b)(2). However, we are willing to assume that it does here, for purposes of this discussion only, because we believe that the reasoning

---

1. A line appears on the lower part of the words "and lighting equipment and machinery." This could reference a deletion or an underscoring of these provisions. Our disposition is unaffected by accepting the Objector's contention that this was meant as a deletion.

of the Objector nevertheless has two flaws which require us to reject its tenets even if we assume the applicability of the prohibitory language in § 1322(b)(2): (1) It equates the terms "modify the rights" in § 1322(b)(2) with "curing a default" in § 1322(b)(5); (2) It fails to consider the impact of § 1322(b)(3).

At the outset, we reiterate our statement in *In re Small*, 65 B.R. 686, 689 (Bankr.E. D.Pa.1986), *aff'd*, 76 B.R. 390 (E.D.Pa. 1987), that the interplay of §§ 1322(b)(2) and (b)(5) is less than clear. However, we also reiterate our one definitive statement therein regarding their interplay: "there is a significant difference between the 'curing of any default,' which is the subject matter of § 1322(b)(5), and 'modification of the rights of holders of secured claims,' which is the subject matter of § 1322(b)(2)." Our principal sources of authority for this statement were opinions of two Court of Appeals, *Grubbs v. Houston First American Savings Ass'n*, 730 F.2d 236, 240–42 (5th Cir.1984) (en banc); and *In re Taddeo*, 685 F.2d 24, 27–28 (2d Cir.1982). Particularly convincing to us was the detailed historical analysis presented by the *Grubbs* court, in a decision adopted by a 10–4 vote by the court en banc.

Subsequent to our decision in *Small, supra,* our own Court of Appeals has decisively spoken twice on the same subject. In *In re Roach*, 824 F.2d 1370, 1374–77 (3d Cir.1987), the Court, citing *Grubbs* and *Taddeo* with approval, concurred with their common conclusion as to the interplay between §§ 1322(b)(2) and (b)(5). The Court concluded as follows, 824 F.2d at 1376:

> Based upon the foregoing, we conclude that Congress did not view a cure of a home mortgage as a modification of the holder's rights within the meaning of § 1322(b)(2) and, accordingly, that neither the power to cure under § 1322(b)(3) nor the power to cure under § 1322(b)(5) is limited by the provision of § 1322(b)(2) prohibiting modification of home mortgages. *Accord, e.g., In re Taddeo*, 685 F.2d at 27; *Grubbs*, 730 F.2d at 241–42, 246–47. Nothing in § 1322(b)(3) limits its authority to cure to pre-acceleration defaults and the Court of Appeals for the

Second Circuit relied upon that fact in holding that § 1322(b)(3) authorized a post-acceleration cure of a longterm mortgage. *In re Taddeo*, 685 F.2d at 28. Although we are inclined to view the relationship between § 1322(b)(3) and § 1322(b)(5) somewhat differently, we agree that the authority conferred by § 1322(b)(3) cannot be limited to pre-acceleration cures and we believe that fact is important in evaluating the argument that the concluding clause of § 1322(b)(5) limits the authority therein conferred to unaccelerated mortgate obligations.

Based on text legislative history, we believe § 1322(b)(5) was intended to make it clear that the power to cure extends to longterm obligations that will survive beyond the life of the plan. When § 1322(b)(5) is so viewed, the function of § 1322(b)(3) is to provide authority for curing obligations that will be paid off during the life of the plan. *See Grubbs*, 730 F.2d at 243–45.

Moreover, the Court of Appeals reiterated the substance of its aforesaid holding of *Roach* in *In re Capps*, 836 F.2d 773 (3d Cir.1987), wherein it affirmed the substance of our holding that a secured creditor could not demand interest on mortgage arrearages in *Small*. There, the Court noted that, in *Roach*, "we concluded that Congress did not see cure as effecting a modification of creditors' interests."

 We agree with the Objector's assertion that § 1322(b)(5) is not authority for the Debtor's attempt to cure his defaults in the obligation owed to the Objector, since the last payment on the obligation is due before the final payment due under the Plan. However, we disagree with its assertion that the prohibitory language of § 1322(b)(2), relating solely to attempts to "modify" secured claims rather than "curing" defaults in their payment, is applicable. The Code section which we do think is applicable here is § 1322(b)(3), which simply allows a Chapter 13 debtor to provide for curing and waiving *any* default. The passage quoted from *Roach* at page 43 *supra* clearly holds that the broad language of § 1322(b)(3) is not limited at all by

§ 1322(b)(2), and is further not limited by § 1322(b)(5) when the last payment on the obligation in issue is due prior to the last payment under the plan. Therefore, we believe that the Debtor's efforts to cure his rather modest post-petition defaults are within from the broad scope of plan provisions expressly authorized by § 1322(b)(3).

■ This controversy also presents the specific issue of a debtor's right to cure post-petition defaults in a Chapter 13 plan. This issue has surfaced in a number of cases. The majority rule appears to be consistent with Collier's statement that, even in a situation where § 1322(b)(5) is applicable, "[i]t [§ 1322(b)(5) ] may be utilized to cure postpetition defaults." 5 COLLIER ON BANKRUPTCY, ¶ 1322.09, at 1322–18 (15th ed. 1987). *See, e.g., In re McCollum,* 76 B.R. 797, 799–801 (Bankr.D. Ore.1987); *In re Nickleberry,* 76 B.R. 413, 416 (Bankr.E.D.Pa.1987); *In re Minick,* 63 B.R. 440, 442–46 (Bankr.D.D.C.1986); *In re Canipe,* 20 B.R. 81, 83–84 (Bankr.W.D.N.C. 1982); and *In re Simpkins,* 16 B.R. 956, 960–68 (Bankr.E.D.Tenn.1982). These cases involve § 1322(b)(5), and hold that a post-petition default of even a long-term obligation can be cured in a Plan despite the protections for long-term lenders provided in § 1322(b)(5), and the mandate of that Code section that the debtor "provide for ... maintenance of payments while the case is pending" on an obligation on which the last payment is due after the last plan payment. Here, the issue is an obligation not within the scope of § 1322(b)(5). In such an instance, the broad, permissive language of § 1322(b)(3), which does not require the debtor to provide for maintenance of payments, is applicable. In such a circumstance, a cure of post-petition defaults does not appear to be prohibited.

We do make note of four decisions which could be read as disagreeing with the above majority rule. However, we believe that, for the most part, they merely express reasonable limitations to a debtor's ability to effect cures of post-petition defaults in Chapter 13 Plans: *In re Seidel,* 752 F.2d 1382 (9th Cir.1985); *In re Gavia,*

24 B.R. 573, 574–75 (9th Cir.BAP 1982); *In re Nicholson,* 70 B.R. 398 (Bankr.D.Colo. 1987); and *In re Parker,* 46 B.R. 106, 108 n. 1 (Bankr.N.D.Ga.1985).

*Seidel* holds that a debt which has already matured prior to filing cannot be cured under either §§ 1322(b)(3) or (b)(5), particularly under a plan that features a final balloon payment. While we may differ from that Court's statement that a matured debt can never be cured, as does the court in *Simpkins, supra,* at 966–67, we would not be likely to be receptive to the concept of a cure dependent upon a large, final balloon payment. Such a plan appears to effect such an unreasonable delay in the making of a cure that it may well constitute a modification of the secured claimant's rights.

In *Gavia,* the court frowns upon a plan that contemplated suspension of all payments for six months. *Parker,* while initially stating, we believe in error, that § 1322(b)(2) prohibits curing of post-petition defaults, allows that "the court may, in the exercise of its equitable discretion, give the debtors time in which to bring post-petition arrearages current." 46 B.R. at 108 n. 1. Recalling our own statements in *Nickleberry* that "a modest and justifiable post-petition delinquency can be cured," 76 B.R. at 416, we emphasize that the degree of the post-petition defaults is relevant and that scrutiny of the equity of the means for curing same is necessary. We find the defaults of the Debtor here to be modest and the means devised for their cure to be reasonable. However, excessive delays in making current payments may well run afoul of the § 1322(b)(5) requirement that the debtor accomplish "maintenance of payments," or become so onerous to the creditor that the cure is worse than the disease. Of course, here, the requirement that the debtor "provide for ... maintenance of payment," as per § 1322(b)(5), is not applicable.

Worthy of some scrutiny is the *Nicholson* decision, because it represents a complete departure from our analysis of how Chapter 13 cases should be administered. That case arose on a motion by the debtor

seeking a determination that the automatic stay applied to a foreclosure proceeding alleging post-confirmation mortgage-payment defaults. The court held that, due to the presence of 11 U.S.C. § 1327(a), the mortgaged premises re-vested in the debtor and a new mortgage agreement was created which was not subject to the stay, and hence the stay did not apply. This result that would surely surprise the many mortgagees who come before us and assume that they must obtain relief from the automatic stay before they can proceed against debtors who commit post-confirmation defaults.

We think that the assumption of these mortgagees is correct. We note that, in *In re Clark,* 71 B.R. 747, 749-50 (Bankr.E.D. Pa.1987), we held that, even as to a post-confirmation obligation, the automatic stay remains in place until the case is closed, dismissed, or converted to another Chapter, in accordance with 11 U.S.C. § 1306.[2] Therefore, we certainly do *not* agree that the confirmation of a plan eviscerates the automatic stay as to a debtor's pre-confirmation payment obligations.

We also note that the *Nicholson* result is inconsistent with the decisions in this court and elsewhere that a mortgagee can obtain post-confirmation relief from the automatic stay only for post-confirmation defaults in payment. *See, e.g., In re Dougherty,* 76 B.R. 410, 11 (Bankr.E.D.Pa.1987); *appeal dismissed,* C.A. No. 87-4813 (E.D.Pa. Nov. 6, 1987), *appeal dismissed,* No. 87-1757 (3d Cir. Dec. 29, 1987); *In re Ellis,* 60 B.R. 432, 434-35 (9th Cir.BAP 1985); *In re Clark,* 38 B.R. 683, 684-85 (Bankr.E.D.Pa. 1984) (GOLDHABER, CH. J.); and *In re Pizzullo,* 33 B.R. 740, 741 (Bankr.E.D.Pa. 1983) (TWARDOWSKI, present CH. J.). According to *Nicholson,* there is no stay and therefore, under its reasoning, the concept of what could constitute a post-confirmation stay violation never could be reached. It is therefore inconsistent with all of the above decisions, including those of this court's past and present Chief Judge. *Compare McCollum,* 76 B.R. at

809 n. 1 (also criticizes this aspect of the *Nicholson* holding).

We therefore find the *Nicholson* decision totally out of sync with the decisions of this court and we decline to follow its dictum, unsupported by any citations, that "a Chapter 13 plan may not modify the rights of a creditor ... except to cure pre-petition defaults within a reasonable time." 70 B.R. at 401. Moreover, this passage reverts to the muddling of the terms "modification" and "cure" which our Court of Appeals put to rest in *Roach, supra,* and *Capps, supra.*

We therefore conclude that the Debtor's attempt to cure the modest post-petition defaults in issue here is permissible pursuant to § 1322(b)(3). Observing no other objections to confirmation and having received the Trustee's execution of a Report recommending confirmation, we shall approve same and enter an Order overruling the Objections of the Objector here and confirming the Debtor's Chapter 13 Plan.

---

**2.** Ironically, one of our principal authorities was *In re Root,* 61 B.R. 984 (Bankr.D.Colo.

1986), a decision rendered by another bankruptcy judge in the same court as *Nicholson.*