**In re Patricia SMITH, Debtor.**

**Bankruptcy No. 87–03859S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 8, 1989.

---

Irwin Trauss, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

Jonah D. Levin, Norristown, Pa., for movant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The KISSELL COMPANY, presently known as CITIFED MORTGAGE COMPANY (hereinafter "the Mortgagee"), has filed a second post-confirmation motion seeking relief from the automatic stay in order to proceed with applicable state-court remedies in foreclosure of the premises of the Debtor, PATRICIA SMITH (hereinafter "the Debtor"), located at 2075 East Victoria Street, Philadelphia, Pennsylvania 19134 (hereinafter "the Premises"). Since the Debtor has not performed any of the obligations under her Plan, which we confirmed more than eight (8) months ago on December 13, 1988, over numerous objections thereto by the Mortgagee, we are constrained to grant the Mortgagee's motion. We take this action with some regret, because the Debtor has what appears to be good reasons for her failure to perform, which might have justified an amendment to her Plan pursuant to 11 U.S.C. § 1329(a). However, no motion to amend her Plan has been filed or proposed, and therefore our only reference point is the Debtor's Amended Plan confirmed on December 13, 1988.

### B. PROCEDURAL HISTORY AND RELEVANT FACTS

The positions of the parties can best be understood only in the context of the history of this case, some of which is related in an Opinion of October 28, 1988, which decided an adversary proceeding between the parties and which is reported at 92 B.R. 127. On June 16, 1988, almost a year after the filing of this case on July 31, 1987, the Mortgagee filed its initial motion seeking relief from the automatic stay in order that it could foreclose on the Premises. 92 B.R. at 128–29. We learned, at a hearing on July 14, 1988, that the Debtor's belated filing of her Chapter 13 Statement and Plan and her procrastination in filing a planned adversary proceeding had delayed not only administration of the case, but also any provision of payments to the Mortgagee. *Id.* Wishing to give the Debtor an opportunity to save her home, we suspended any relief from the stay as long as she paid at least $425 monthly to the Mortgagee thereafter and proceeded to file the planned adversary proceeding immediately. That proceeding was filed and, after trial, resulted in the Opinion cited above, which reduced the Mortgagee's claim by a total of $1,619.27 to $21,394.28. The accompanying

Order scheduled a Confirmation hearing at which the Debtor was obliged to submit an Amended Plan consistent with the results in the adversary proceeding by November 10, 1988.

The Debtor ultimately prepared a plan calling for her to pay the entire $21,394.28 claim, plus interest at ten (10%) percent, by making payments of $470 monthly for sixty (60) months after confirmation directly to the Mortgagee and making direct payment of taxes and fire insurance on the Premises. The Mortgagee raised strenuous objections on three points, but, again providing the Debtor with every opportunity to save her home, we filed an unreported Memorandum and Order November 21, 1988, which granted most of the Debtor's requests. First, given the Debtor's "compelling circumstances," we allowed her to present a plan which extended for sixty (60) months after confirmation. *See West v. Costen,* 826 F.2d 1376, 1378 (4th Cir. 1987); and *In re Eves,* 67 B.R. 964, 966–67 (Bankr.N.D.Ohio 1986) (in light of 11 U.S.C. § 1329(c), 11 U.S.C. § 1322(c) should be read to allow plan to be modified to extend sixty (60) months after confirmation). *But see In re Woodall,* 81 B.R. 17, 18 (Bankr.E. D.Ark.1987) (60–month period in § 1322(c) must be measured from the date that payments must commence per § 1326(a)(1), *i.e.,* thirty (30) days after filing the case). Secondly, we allowed her to make payments directly to the Mortgagee as opposed to through the Trustee. *See In re Foster,* 670 F.2d 478, 486–89 (5th Cir.1982); *In re Waldman,* 81 B.R. 313, 314–15 (Bankr.E.D. Pa.1987); and *In re Evans,* 66 B.R. 506, 509–10 (Bankr.E.D.Pa.1986), *aff'd,* 77 B.R. 457 (E.D.Pa.1987) (Chapter 13 debtor may opt to pay a secured creditor "outside" the plan). In so doing, we rejected the Mortgagee's contention that the intermediary of the Trustee was necessary to monitor the Plan payments. Finally, we ruled that the Debtor could make the payments for taxes and insurance directly to the taxing authorities and insurer, respectively, over the Mortgagee's contention that this procedure would minimize assurances that the Debtor made these payments. In order to met the Mortgagee's concerns, we obliged the Debtor to notify the Mortgagee of billings and payments of taxes and insurance in order that it could monitor the payments. We added:

> Any default by the Debtor in such terms, as well as in making payments, would, of course, constitute grounds for relief from the automatic stay for the Mortgagee. *See In re Ford,* 84 B.R. 40, 45 (Bankr.E.D.Pa.1988).

Memorandum of November 21, 1988, slip op. at 6, 1988 WL 125702.

The Amended Plan prepared thereafter and confirmed on December 13, 1988, conformed in all respects to the terms which we deemed permissible in our Memorandum and Order of November 21, 1988.

The only appeal from this sequence of orders was by the Debtor, protesting our limitation of attorneys' fees and costs to her counsel to those attributable to the Mortgagee's violation of the federal Truth-in-Lending Act, 15 U.S.C. § 1640(a)(3), rather than also allowing such fees and costs attributable to the Mortgagee's purported violations of state law, 41 P.S. § 503. *See* 92 B.R. at 133. Our ruling on this point was reversed by the district court in an Order of April 18, 1989, reported at 98 B.R. 708 (E.D.Pa.), and remanded for a calculation of attorneys' fees under the state law. After a lengthy and hotly-contested hearing of June 15, 1989, we entered an Order of June 22, 1989, allowing the Debtor attorneys' fees and costs totalling $6,195.26.

Ironically, throughout this stream of post-confirmation satellite fee litigation, neither party mentioned the Debtor's nonperformance under the plan terms or any adverse developments which had transpired as to her. We assumed that she was living in the Premises and making payments pursuant to the terms of the Amended Plan.

However, on June 27, 1989, almost immediately after the entry of our Order of June 22, 1989, in the adversary proceeding, the Mortgagee filed a motion seeking relief from the automatic stay in order to permit it to foreclose on the Premises. The matter was scheduled for a hearing on July 25, 1989. The Debtor requested a continuance,

advising this court, for the first time, that she was no longer residing at the Premises due to a substantial fire which had occurred there in January, 1989, and alleging that hence she was improperly served there. Over the Mortgagee's strenuous opposition to any continuance, we continued the hearing for one day.

The Mortgagee appeared the next day with no witnesses. Given the limited admissions of any material allegations in the answer, we were constrained to deny the motion on the bare pleadings because the Mortgagee failed to produce any evidence supporting relief. See In re Ward, 837 F.2d 124, 128 (3d Cir.1988); In re Morysville Body Works, Inc., 86 B.R. 51, 55 n. 7 (E.D.Pa.1988) (per TWARDOWSKI, CH. J.); In re Metro Transportation Co., 82 B.R. 351, 353 (Bankr.E.D.Pa.1988); In re Kim, 71 B.R. 1011, 1014–16 (Bankr.C.D. Cal.1987); and In re Stranahan Gear Co., 67 B.R. 834, 836–38 (Bankr.E.D.Pa.1986). However, in our Order of July 26, 1989, denying the motion without prejudice, we stated that, if the Mortgagee filed and served another motion seeking relief from the stay by August 2, 1989, we would relist same for a hearing on August 24, 1989.

■ ▇▇ The new motion having been timely filed and purportedly served, the Debtor, on August 24, 1989, filed an answer which, inter alia, disputed this court's in personam jurisdiction over the Debtor because she had again been served by again mailing a copy of the motion to her at the Premises, which she again stated she had vacated due to a fire. However, after a careful review of the case docket and Bankruptcy Rule (hereinafter "B. Rule") 7004(b)(9), we denied this contention.[1] Although disputing the validity of a subpoena served upon her by the Mortgagee, the Debtor ultimately appeared and testified on her own behalf.

At the hearing the Mortgagee called, as its only witness, Michael Greenwood, the Supervisor of its bankruptcy department. He testified that the Debtor had not made any payments to the Mortgagee since December, 1988, when she had paid $850 (December 8, 1988) and $425 (December 23, 1988). He also stated that, since the Debtor had not done so, the Mortgagee had been obliged to pay the taxes and the fire insurance on the Premises for both 1988 and 1989.

The Debtor, having appeared, did not contradict Mr. Greenwood's above testimony, but rather contended that her non-performance was excused by an almost remarkable series of misfortunes. She testified that, on January 21, 1989, a serious fire has occurred at the Premises, apparently caused by one of her children. As a result, she, her fiancé, and her four children (aged 16, 15, 10, and 3) were forced to vacate the Premises and rent alternative housing, originally finding a place renting for $550 monthly and later moving to a less desirable premises renting for $400 monthly. Funds which she claimed to have saved for her January payment to the Mortgagee were, understandably, exhausted in re-establishing shelter for her family. Moreover, her oldest child, a 16-year-old daughter, proceeded to run away from home for several weeks, and when located, was found to be severely injured, requiring extended hospitalization and, presently, extensive rehabilitation at home. Her 15–year–old son, who suffers from psychiatric problems, was struck by a car and required treatment. Her 10–year–old child suffered nightmares from the fire. Her fiance, a substantial financial resource, suffered a back injury and heart attack which required his hospitalization and rendered him unable to work. The only positive development noted was the Debtor's own acquisition of a higher-paying job (presently $18,800 annually and expected to rise to $21,000 annually) as a drug counsellor.

---

1. This rule requires service upon the debtor "by mailing copies of the ... [papers] ... to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in writing filed with the court and, if the debtor is represented by an attorney, to the attorney at his post office address." The petition and statement of affairs listed the Premises as the Debtor's address and no designation in writing of any change in the address was established. Therefore, service of the Debtor at the Premises was proper.

The Debtor claimed that she had not paid the taxes nor the insurance because she had received no billings for same. However, she admitted that she had not attempted to obtain these billings. Her failure to make mortgage payments was attributed partially to financial incapability of doing so in light of the developments described in the last paragraph and partially to her belief that an insurance claim, which she was pursuing, would compensate her for damages to the home and personalty and provide her with an allowance for living expenses. The terms of the policy and the status of claim were not totally clear; however, the maximum recovery for damage to the real estate was agreed to be $19,000.[2]

Mr. Greenwood indicated awareness of the fire and insurance claim. He also stated that the mortgage was guaranteed by the Federal Housing Administration (hereinafter "FHA"). *See* 24 C.F.R. §§ 203.401, 203.402.

We accorded the parties until September 1, 1989, to submit post-hearings Briefs. Only the Debtor responded by timely submitting a Memorandum of Law.

C. THE MORTGAGEE WAS OBLIGED TO ESTABLISH THE PRESENCE OF THE DEBTOR'S SUBSTANTIAL DEFAULTS IN THE TERMS OF THE CONFIRMED PLAN IN ORDER TO OBTAIN RELIEF.

The courts are in some disagreement regarding the post-confirmation rights of a mortgagee of residential realty whose secured claim is dealt with in a Chapter 13 plan. Some courts have held that, when property "revests" in the debtor by operations of 11 U.S.C. § 1327(b) and/or the terms of a confirmed plan,[3] the automatic stay terminates, and the mortgagee may proceed to enforce all available state-court remedies against the mortgagor without first returning to the bankruptcy court for relief from the stay. *See Laughlin v. United States Internal Revenue Service,* 98 B.R. 494 (D.Neb.1989); and *In re Nicholson,* 70 B.R. 398, 400–01 (Bankr.D. Colo.1987). However, most courts, including this court, have disagreed, and held that the automatic stay remains intact after confirmation. *See In re Vanasen,* 81 B.R. 59, 61–62 (D.Ore.1987); *In re Ford,* 84 B.R. 40, 44–45 (Bankr.E.D.Pa.1988); and *In re McCollum,* 76 B.R. 797, 800–01 & n. 1 (Bankr.D.Ore.1987). Our conclusion on this issue follows from our less universally-adopted holding that, by force of 11 U.S.C. § 1306(a)(1), property which "revests" in the debtor at the time of confirmation remains property of the estate until the case is closed, dismissed, or converted to another Chapter. *In re Clark,* 71 B.R. 747, 749–50 (Bankr.E.D.Pa.1987). *Compare In re Schewe,* 94 B.R. 938, 942–45 (Bankr.W. D.Mich.1989); and *In re Root,* 61 B.R. 984 (Bankr.D.Colo.1986) (concur with *Clark* holding), *with In re Walker,* 84 B.R. 888 (Bankr.D.D.C.1988); and *In re Johnson,* 51 B.R. 439, 442 (Bankr.E.D.Pa.1985) (per GOLDHABER, CH. J.) (disagree with *Clark* holding).[4]

Another area of disagreement is whether, as the Debtor here urges, the creditor is "limited to a motion to convert or dismiss in the event the debtor defaults" in post-confirmation payments. *In re Brock,* 6 B.R. 105, 108 (Bankr.N.D.Ill.1980). Cases subsequent to *Brock* have apparently uniformly held that, while dismissal or conversion is an alternative, a motion seeking relief from the stay is an appropriate reme-

---

2. In her post-hearing Memorandum, the Debtor claims that she has been told by an adjustor that $19,000 would be paid to the Mortgagee under the policy and that the claim for living expenses was being processed. Recognizing that this information was not part of the record, but being unable to resist improperly referencing it, the Debtor promised to file a motion to reopen the record on this point.

3. Paragraph 124 of the Debtor's Second Amended Plan provides that "[t]he title to the property of the estate shall revest in the debtor upon confirmation of this plan subject only to the lien" of the Mortgagee on the Premises.

4. We would respectfully submit that the holding of former Chief Judge Goldhaber on this point in the context of the *Johnson* case is vitiated by his rulings on the merits of motions seeking post-confirmation relief from the stay in *In re Clark,* 38 B.R. 683, 684–85 & n. 3 (Bankr.E.D.Pa. 1984); and *In re Jones,* 26 B.R. 142, 143 (Bankr. E.D.Pa.1983).

dy for a debtor's post-confirmation plan default as well. *See, e.g., In re Ellis,* 60 B.R. 432, 434–35 (9th Cir.BAP 1985); *In re Elmore,* 94 B.R. 670, 678 (Bankr.C.D.Cal. 1988); *In re Davis,* 64 B.R. 358, 359 (Bankr.S.D.N.Y.1986); and *In re Pizzullo,* 33 B.R. 740, 741 (Bankr.E.D.Pa.1983) (per TWARDOWSKI, J.).

■ The vast majority of cases, consistent with our statements in *Ford, supra,* 84 B.R. at 45; and *In re Dougherty,* 76 B.R. 410, 411 (Bankr.E.D.Pa.1987), *appeal dismissed,* C.A. No. 87–4813 (E.D.Pa. Nov. 6, 1987), *appeal dismissed,* No. 87–1757 (3d Cir. Dec. 29, 1987), have held that a debtor's substantial default in performance of the terms of a confirmed Chapter 13 plan constitutes a ground for relief from the automatic stay. *See, e.g., In re Raymond,* 99 B.R. 819, 822–23 (Bankr.S.D.Ohio 1989); *In re Randall,* 98 B.R. 916, 918–19 (Bankr. N.D.Ill.1989); *Elmore, supra,* 94 B.R. at 678–79; *In re Durben,* 70 B.R. 14, 15–16 (Bankr.S.D.Ohio 1986); *Davis, supra,* 64 B.R. at 359; *In re Toth,* 61 B.R. 160, 166 (Bankr.N.D.Ill.1986); *In re Zimble,* 47 B.R. 639, 640–41 (Bankr.D.R.I.1985); *Clark, supra,* 38 B.R. at 684–85 (per GOLDHABER, CH. J.); *Pizzullo, supra,* 33 B.R. at 742 (per TWARDOWSKI, J.); *Jones, supra,* 26 B.R. at 144–45 (per GOLDHABER, CH. J.); and *In re Lewis,* 8 B.R. 132, 137 (Bankr.D. Idaho 1981).[5] As particularly *Davis, Toth, Clark,* and *Pizzullo, supra,* point out, the issue of whether the debtor's plan, if its terms are complied with, provides adequate protection to the secured party is effectively *res judicata* once a plan is confirmed. The only real issue before the court in a post-confirmation motion for relief from the automatic stay is whether the debtor has substantially complied with the terms of the confirmed plan.

D. THE DEBTOR HAS DEFAULTED COMPLETELY ON ALL OF HER OBLIGATIONS UNDER THE PLAN; THEREFORE, RELIEF FROM THE AUTOMATIC STAY MUST BE ALLOWED TO THE MORTGAGEE.

■ Therefore, the only issue to be resolved is whether the Debtor here has substantially complied with the terms of her Plan. Patently, she has not. For a period of over eight (8) months, she has failed to perform *any* of her obligations under the terms of her confirmed Plan. Her payment of $425 on December 23, 1988, although post-confirmation, was remitted in the amount of *pre*-confirmation monthly payments rather than in the post-confirmation monthly payment amount of $470. Therefore, it seems highly likely that this payment was remitted on account of pre-confirmation delinquencies rather than post-confirmation sums due. She made no payments of taxes or insurance, as required under the terms of the Plan. It is thus inevitable that relief from the stay must be granted to the Mortgagee.

The Debtor makes several arguments to attempt to avert this result. First, she contends, with respect to the payments for taxes and insurance, that she was not mailed the bills for same and that the Mortgagee unilaterally (and perhaps officiously) paid them without notifying her. These contentions pale in light of the Debtor's admission that she made no inquiry from the Mortgagee, the taxing authorities, or the insurer to arrange that these billings be sent to her. That the Debtor receive and pay these billings was a responsibility which she expressly undertook under the terms of the Plan. The Debtor is an intelligent, resourceful woman. Even prior to the sequence of tragedies in her life which commenced with the fire, she made no effort to fulfill these responsibilities. Nor has she tendered (or even offered) to pay these amounts now. Her behavior clearly evinces a failure to adhere to material terms of her Plan, *see Toth, supra,* 61 B.R. at 166; and *Zimble, supra,* 47 B.R. at 640–41 (maintaining insurance is a material plan condition), in the face of our expression of confidence in her by allowing her to exercise this responsibility over the express objection to our allowing her to do so by the Mortgagee. Fortunately for her, but through no action on her part, the Mortgagee did not let the fire insurance lapse.

---

5. We would observe that these cases constitute implicit support for our reasoning in *Clark, supra,* 71 B.R. 749–50, as well as that in *Ford, supra.*

The second argument made is that the onset of the fire excused the making of the Plan payments to the Mortgagee. We agree that failure to make payments to a secured party pursuant to the precise terms of a confirmed plan does not mandate relief from the stay to a secured creditor. *See, e.g., Raymond, supra,* 99 B.R. at 822–23; *Durben, supra,* 70 B.R. at 16; and *Pizzullo, supra,* 33 B.R. at 742. *Cf. Morysville Body Works, supra,* 86 B.R. at 57; and *In re Tashjian,* 72 B.R. 968, 973–74 (Bankr.E.D.Pa.1987). *But cf. In re Kessler,* 76 B.R. 434, 437 (Bankr.E.D.Pa.1987) (failure to make payments is a substantial factor in favor of granting relief from the automatic stay). However, here, the failure to remit payments is *total.* And it is cumulative with a failure to make the necessary payments on taxes or insurance. We recognize that the fire and the other misfortunes suffered by the Debtor constituted an intervening force which made the Debtor's failure to perform at least understandable. We note, however, that, as of January 21, 1989, the *date* of the fire, the Debtor had *not* remitted the January mortgage payment; nor had she, as of that date, attempted to pay her taxes or insurance.

Thirdly, and most vociferously, the Debtor argues that the Mortgagee is adequately protected by factors not related to the Debtor's performance under the conditions of her Plan. In this respect, the Debtor points to the imminent recovery from the fire insurer of not only proceeds to pay the Mortgagee for the damage to the real estate, but recovery of compensation for living expenses by her as well. Also noted is the fact that the Mortgagee is protected by FHA mortgage insurance. *See Commonwealth of Pa. State Employees' Retirement Fund v. Roane,* 14 B.R. 542, 545–46 (Bankr.E.D.Pa.1981).

There are two difficulties with these assertions. First, the most significant factor in weighing a post-confirmation motion for relief from the stay is *not* a review of whether the Mortgagee was adequately protected by the terms of the Plan. We observed earlier that Mortgagee is precluded from raising the lack of adequate protection independent from the terms of the plan as a basis for relief from the stay. Concomitantly, the Debtor should also be restricted from raising factors independent from the plan as a basis for denial of stay relief on the ground that she is providing alternative adequate protection alternative to the terms of the Plan, subject to what we note hereinafter regarding a debtor's right to make amendments to a confirmed plan. Thus, we must focus on the Debtor's compliance with her confirmed Plan, not whether the Debtor could have proposed and achieved confirmation of a plan which provided less protection to the Mortgagee.

Secondly, the Debtor has not quantified the protection which the Mortgagee is likely to receive from insurance coverage in this record. The operation of the FHA mortgage insurance is not totally clear. The prospective recoveries from the fire insurer by the Debtor are even less clear. Her children's role in causing the fire could affect the Debtor's recovery. It is unclear how any proceeds recovered must be and hence will be allocated. The Debtor seems to assume that the proceeds will both pay for extensive repairs necessary for rendering the Premises habitable *and* compensate the Mortgagee for her failure to make payments by reducing the mortgage balance. Obviously, the proceeds cannot do both. Ideally, payments should have been kept current on the mortgage obligation, as modified by the confirmed plan, and proceeds should be allocated entirely to repairs, except for the Debtor's recoveries for losses of personal property and living expenses.

Finally, the result of granting the Mortgagee relief from the automatic stay perhaps could have been avoided, had the Debtor been able to propose an amendment to her Second Amended Plan pursuant to 11 U.S.C. § 1329(a). *See McCollum, supra,* 76 B.R. at 800. *Cf. Dougherty, supra,* 76 B.R. at 411–12. Certainly, the Debtor had ample warning of the Mortgagee's intention to move for relief from the stay, since the predecessor to the present motion was filed on June 27, 1989. It is difficult to believe that the Debtor or her

committed counsel would have vigorously engaged in satellite fee litigation and failed to proposed an amendment to her Plan through to this date, over two months *after* June 27, 1989, if the filing of a further amended plan had been feasible. *See In re Gronski*, 86 B.R. 428, 432 (Bankr.E.D.Pa. 1988) (debtor has a broad power to request post-confirmation amendments for good cause). The Debtor has rather mysteriously eschewed the alternative which is generally available to a debtor who suffers the sort of largely blameless catastrophes which befell the Debtor here.

Making this decision would have been considerably more difficult had we not given the Debtor every opportunity to propose a successful plan over the past year. It appears that, as of the date of the fire, the Debtor had abused this indulgence. Thereafter, her plan commitments were apparently so substantial that she could not financially weather the unfortunate events that befell her.

▮ The Debtor may, of course, now belatedly propose the plan amendment that has not been forthcoming to date and attempt to reinstate the automatic stay. We note, however, the heightened burden upon her to do so. *See In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 699–701 (3d Cir.1989).

An order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 8th day of September, 1989, after a hearing of August 24, 1989, on the Motion of the KISSELL COMPANY, now known as CITIFED MORTGAGE CORPORATION, for relief from the Automatic Stay, and upon consideration of the arguments of counsel and the Memorandum of Law of the Debtor, it is hereby

ORDERED that the motion is GRANTED and the movant may proceed with any applicable state-court remedies in reference to the Debtor's premises at 2075 East Victoria Street, Philadelphia, Pennsylvania 19134.