James B. CURASI, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 92–776–Civ–Orl–22.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 22, 1995.

James B. Curasi, pro se.

Bruce T. Russell, Cynthia Lewis Stier, U.S. Dept. of Justice, Tax Division, Washington, DC, for Defendant.

## MEMORANDUM DECISION

CONWAY, District Judge.

### I.  INTRODUCTION

This case was tried before the Court, without a jury, on June 5 and 6, 1995.  Upon consideration of the parties' evidence, arguments and legal memoranda, the Court issues this memorandum decision.

### II.  PROCEDURAL BACKGROUND

The plaintiff, James B. Curasi, commenced this action "to recover an unstated amount of taxes paid in partial satisfaction of assessments made pursuant to Section 6672 of the Internal Revenue Code of 1986 (26 U.S.C.)." Pretrial Stipulation (Dkt. 63) at 2.  The United States of America ("the Government") counterclaimed for the unpaid balance remaining on the assessments.

At trial, the parties agreed to submit the entire case to the Court for decision, and waived trial by jury.  Transcript of Proceedings (Dkt. 78) ("TR. __") at 10.  Curasi further stipulated that he was a responsible person, and that his failure to submit the subject taxes was willful, within the meaning of 26 U.S.C. § 6672.  TR. 4–8.  Based on that stipulation, the parties agreed that the only fact issue remaining for determination by the Court was the accuracy of the assessments and the amount of taxes due.  TR. 8–9.[1]  The Court took evidence on that fact

---

**1.** In the Pretrial Stipulation, Curasi framed the "accuracy" issue as follows: "5. Whether the tax returns underlying the assessments are not accurate, have been altered and/or forged, were not

issue and, at the conclusion of trial, directed the parties to submit post-trial briefs on the legal issues of the case.

### III. ASSESSMENTS AT ISSUE

Prior to preparation of the parties' Pretrial Stipulation, the Government's counterclaim encompassed the unpaid employment tax liability of Air Illinois, Inc., and the unpaid employment and excise tax liabilities of Atlantic Gulf Airlines, Inc. However, the Court ruled at the inception of trial that the Government had failed to preserve its excise tax claim in the Pretrial Stipulation, and that Curasi would be unduly prejudiced by resurrection of that claim at trial. By virtue of the Government's waiver, only the employment tax liabilities of the two corporations are at issue.[2]

The relevant tax periods for Air Illinois are the third and fourth quarters of 1985. The pertinent tax periods for Atlantic Gulf are the third and fourth quarters of 1985, and the first three quarters of 1986.

### IV. BURDEN OF PROOF

■ A plaintiff asserting a tax refund claim "bears the burden of proving both the excessiveness of the assessment and the correct amount of any refund to which he is entitled." *Carson v. United States*, 560 F.2d 693, 696 (5th Cir.1977). If the Government attempts to collect a tax by way of a counterclaim, "the taxpayer bears only the burden of proving the assessment erroneous." *Id.* If the taxpayer succeeds, the burden shifts to the Government to prove the correct amount of any taxes owed. *Id.*

### V. ANALYSIS

#### A. Curasi's Refund Claim

##### 1. Atlantic Gulf

■ Curasi admitted at trial that he did not file an administrative claim for refund with respect to his assessed liabilities deriving from Atlantic Gulf. TR. 82.[3] The filing of such a claim is a condition precedent to maintenance of a civil action for refund. 26 U.S.C. § 7422(a). Accordingly, Curasi's claim for refund relating to Atlantic Gulf is procedurally barred.[4]

##### 2. Air Illinois

■ Government's Exhibit 1[5] reflects that on August 23, 1989, Curasi was assessed $72,000.16 as a civil penalty for unpaid employment taxes of Air Illinois. This information was confirmed by Revenue Officer Gary

---

filed by authorized officers and do not represent the correct liability." Dkt. 63 at 11. At trial, Curasi referred to "item number five in our pretrial stipulation" as representing the only fact issue remaining for trial. TR. 8–9. However, upon further inquiry by the Court, Curasi made clear that the only remaining fact issue was whether the amounts of the assessments were accurate. TR. 9. Accordingly, no other fact questions remain for determination by the Court. Despite this fact, in his post-trial brief, Curasi stated that the following fact issues remain for determination at trial: "whether the tax returns forming the basis for the assessments against the Plaintiff accurately represented the amount of tax liability, whether said returns had been altered and/or forged, and whether or not said returns were filed by authorized officers." Dkt. 82 at 1–2. Curasi's inclusion of the last two issues is erroneous. In any event, Curasi did not prove at trial that the underlying tax returns had been altered and/or forged, or were not filed by authorized officers.

2. The Government has filed a motion to dismiss the excise tax claim without prejudice. Final disposition of the excise tax claim will be made by separate order addressing the Government's motion.

3. In his response to the Government's post-trial brief, Curasi stated that (1) the IRS did not issue a separate notice of deficiency for the liability based on Atlantic Gulf taxes, and (2) Curasi's "Form 843 claim for refund does not refer to either Air Illinois or Atlantic Gulf taxes, but to all "civil penalties" against [Curasi], which includes *both* Atlantic Gulf Airlines and Air Illinois, Inc." Dkt. 85 at 2. However, these matters were not placed in evidence at trial. Accordingly, the Court cannot consider them.

4. Even if this refund claim were not procedurally barred, Curasi failed to meet his burden at trial of proving that the Atlantic Gulf assessments were erroneous, and that he was entitled to a refund, much less a refund in any particular amount.

5. This exhibit is admissible pursuant to Rules 902(1) and 803(8) of the Federal Rules of Evidence. Even if it were not, the testimony of Revenue Officer Griffen was sufficient to establish the accuracy and amount of the assessment.

Griffen. TR. 217.[6] Moreover, Griffen broke this penalty down by calendar quarters: $33,932.47 for the third quarter of 1985, and $38,067.69 for the fourth quarter of 1985. TR. 216.

Curasi admitted at trial that he did not have any evidence that payments had been made to reduce this tax liability of Air Illinois, and explained that he "was not part of [the] payment plan" for Air Illinois. TR. 64–65. Accordingly, Curasi failed to prove that the assessment was erroneous. He also failed to show that he was entitled to a refund, let alone a refund in any particular amount.

■ Curasi maintains that he has been frustrated in determining the amount of taxes actually owed by the Government's failure to furnish him with the original returns filed by Air Illinois and Atlantic Gulf. At trial, Curasi complained that he had previously asked the Government to produce the two corporation's original tax returns, but that the Government had only given him unsigned copies. Counsel for the Government responded that although the Government had not produced the original returns, Curasi had not asked for them. The Government maintained that it had produced the returns requested by Curasi, that is, the returns upon which the assessments were based. The Court initially was concerned about this matter, but those concerns have been allayed upon examination of Curasi's discovery request.

In his First Request for Production of Documents, served April 27, 1993, Curasi asked the Government to produce "[a]ll documents[,] including but not limited to tax returns, used as a basis for the assessments against" Curasi. As framed, this request does not expressly ask for the original tax returns; instead, it asks for tax returns used as a basis for the assessments. It appears that the Government fairly met that request by furnishing Curasi with the returns the collection officer used to prepare the assessments. Further, with one exception, it appears that the assessments were based on copies of returns that Curasi himself furnished to Revenue Officer Griffen.[7] Accordingly, the Government did nothing wrong in furnishing Curasi with the unsigned returns upon which the assessments were based.

Based on the foregoing, the Court determines that Curasi has failed to prove that he is owed a refund on the Air Illinois assessment.

### B. Government's Counterclaim

#### 1. Atlantic Gulf

■ Government Exhibit 3[8] reflects that on February 22, 1989, Curasi was assessed $161,685.18 as a civil penalty for unpaid employment taxes of Atlantic Gulf. Revenue Officer Griffen confirmed this total and broke down the penalty by calendar quarters: $2,393.58 and $10,386.57 for, respectively, the third and fourth quarters of 1995, and $48,-338.25, $50,283.39, and $50,283.39 for, respectively, the first, second and third quarters of 1986. TR. 214–15.

Curasi testified that Atlantic Gulf made many payments, almost always in the amount of $700, to its bank and designated the payments for application towards the trust fund portion of the company's employment taxes. TR. 37. He further testified that the bank issued the company a receipt for those payments, which read: "This certifies that funds in the amount shown have been received from the employer named covering federal income tax withheld from wages or FICA taxes or both to be transmitted or credited to

---

**6.** According to the trial transcript, Griffen testified that the total was "$72,016." TR. 217. This appears to be a transcription error, undoubtedly resulting from the aural similarity of "$72,016." to the correct figure, "$72,000.16."

**7.** Griffen testified that, at his request, Curasi furnished him in November 1986 with copies of all returns that had been filed. Atlantic Gulf had not yet filed a return for the third quarter of 1986, so Griffen gave Curasi a deadline for doing so. When Curasi failed to meet that deadline,

Griffen contacted the bookkeeper of Atlantic Gulf. She advised Griffen that the liability for the third quarter of 1986 was very similar to the liability for the prior quarter. Since Griffen had a copy of the second quarter return, he prepared a third quarter return for Atlantic Gulf based on the company's second quarter liability. TR. 197–201.

**8.** *See*, n. 5, *supra*.

the Federal Reserve Bank of Atlanta, as fiscal agent of the United States, pursuant to the provisions of the Treasury Department Circular Number 848." TR. 38. Curasi claims that these payments were misapplied by the Government to other tax liabilities and calendar quarters.

In support of this argument, Curasi introduced Plaintiff's Exhibit 1, which is a transcript reflecting tax payments made by Atlantic Gulf. This document, generated by the Government, shows a number of $700 payments. Curasi testified that the document reflects that, "almost without exception", the $700 payments were not applied to trust fund employee taxes for the current quarter, but instead were applied to other taxes in other quarters. TR. 39.

The Court rejects Curasi's argument that the Government misapplied Atlantic Gulf's payments. Plaintiff's Exhibit 1 reflects that, with one exception,[9] each $700 payment is linked to a "micro serial number" which appears to the right of the payment column. Revenue Officer Jose Ramos testified that this "micronumber" is derived from a federal tax deposit coupon submitted by the taxpayer along with the payment. TR. 124–25. The tax coupon designates to what specific tax and period a particular payment is to be applied by the Government. TR. 120; *see also,* TR. 227–28. Ramos testified that all of the $700 payments in Plaintiff's Exhibit 1 which Curasi specifically referenced in his testimony, were applied pursuant to tax coupon directions. TR. 124–25. This evidence convinces the Court that the Government applied the payments in the manner in which Atlantic Gulf designated them.

The Court further determines that the deposit slips, standing alone, do not prove that Atlantic Gulf advised the IRS to apply payments in a manner contrary to the designations in the tax deposit coupons. There is no indication that the IRS was a party to any payment designation arrangement between the bank and Atlantic Gulf. Further, there is no evidence that the IRS ever received these seemingly contrary "designations." Indeed, the fact that the payments were applied in accordance with tax coupons suggests that the IRS did not receive any contrary instructions.

Based on this evidence, the Court determines that Curasi has failed to meet his burden of demonstrating that the Atlantic Gulf assessment was erroneous. The evidence establishes that as of May 5, 1995, Curasi owed $161,685.18 in penalties for unpaid employment taxes of Atlantic Gulf.[10]

### 2. Air Illinois

Based on the evidence discussed in section V.A.2 of this memorandum decision, the Court determines that Curasi has not met his burden of proving that the Government's Air Illinois assessment was erroneous. The evidence establishes that as of May 5, 1995, Curasi owed the Government $72,000.16 in penalties and $792.32 in interest ($1,257.34 less $465.02 payment) for unpaid employment taxes of Air Illinois.

### C. Limitations

■ Curasi maintains that the assessments are illegal for the reason that they were not made within the three year period prescribed by 26 U.S.C. § 6501(a). The Government maintains that under 26 U.S.C.

---

9. The lone exception is a $700 payment shown on page 25 of Plaintiff's Exhibit 1. Several numbers appear beside the payment figure, along with the notation "interest to date." There was no testimony at trial about this particular payment, and the Court cannot determine whether or not it was properly applied, or even how it was applied. Suffice it to say that Curasi has not shown that this payment was in fact misapplied.

10. The Government has failed to prove the amount of interest to which it is entitled on the Atlantic Gulf penalty. Government Exhibit 3 reflects that the Government assessed $6,067.49 in interest against Curasi on May 1, 1989. However, it appears that this interest may relate to both

excise taxes and employment taxes. As previously noted, the Government failed to preserve its claims for unpaid excise taxes in the Pretrial Stipulation. At this juncture, the Court cannot ascertain the amount of interest attributable solely to employment taxes. In its post-trial brief, the Government has not attempted to separate the interest attributable to excise taxes from that attributable to employment taxes. *See,* Government's Post–Trial Memorandum (Dkt. 83), Appendix 1 at n. 17. As a result, the Government will not be awarded interest on the penalty arising from Atlantic Gulf's unpaid employment taxes.

§ 6503(h), the limitations period for assessments was tolled during the pendency of Curasi's bankruptcy proceeding up to the date of confirmation, and for 60 days thereafter.

This question turns on whether assessment of the subject taxes was barred by the automatic bankruptcy stay. The Court concludes that 11 U.S.C. § 362 barred the Government from making the assessments at issue, at least up to the time that Curasi's bankruptcy plan was confirmed.[11] Pursuant to § 6503(h), the three year limitations period was tolled at least until plan confirmation.[12] By operation of that statute, the Government's assessments, made in February (Atlantic Gulf) and August (Air Illinois) 1989, were timely. Accordingly, the Court determines that the Government's counterclaim is not time-barred.

■ The Court rejects Curasi's related argument that the counterclaim is barred because the Government took a different position in Curasi's bankruptcy case than it has in this case, concerning whether the automatic bankruptcy stay precluded it from making the assessments while the bankruptcy proceeding was pending. Upon first inspection, Curasi's argument is appealing. However, it does not withstand close scrutiny.

In its Opposition of the United States to Debtor's Motion for Determination of Tax Liability (attached to Dkt. 82), served December 29, 1989 in Curasi's bankruptcy case, the Government stated: "[T]he automatic stay does not prohibit assessment of post-petition withholding and FICA taxes." In its Post–Trial Memorandum (Dkt. 83) in this case, the Government stated: "Under former Section 362 of the Bankruptcy Code, the automatic stay prohibited assessment during the pendency of a bankruptcy case." Read in isolation, these statements appear to be diametrically opposed. However, when considered in context, the statements are reconcilable.

Although the Government's bankruptcy memorandum is by no means a model of clarity, careful inspection of the document discloses that the Government in substance contended that the automatic stay lifted upon confirmation of the bankruptcy plan because estate property at that time revested in Curasi, and that the 1989 assessments were timely by operation of § 6503. This actually is consistent with the Government's overall position in the instant case. See Government's Post–Trial Memorandum (Dkt. 83) at 10–11 and nn. 9 & 10.

### D. Other Issues

The Court rejects without discussion Curasi's estoppel and laches arguments. The Court similarly rejects Curasi's contentions that the Government denied him constitutional due process, that 26 U.S.C. § 6672 violates the due process clause of the United States Constitution, and that the Government violated 26 U.S.C. § 6203 by failing to provide Curasi with copies of the assessments and the documents underlying the assessments.

### VI. CONCLUSION

Based on the foregoing, the Court determines that James B. Curasi shall take nothing on his claim against the United States, and that the United States shall recover from James B. Curasi the sum of $234,477.66, with post-judgment interest thereon at the rate calculated in accordance with 28 U.S.C.

---

11. The Court recognizes that there is a split of authority concerning whether the automatic bankruptcy stay continues to bar post-petition claims after plan confirmation (and until discharge) in a Chapter 13 bankruptcy case. Compare, In re Dickey, 64 B.R. 3 (Bankr.E.D.Va. 1985), with In re Clark, 71 B.R. 747 (Bankr. E.D.Pa.1987). In the instant case, the assessments were made after plan confirmation, but before discharge. If the automatic bankruptcy stay survives confirmation in a Chapter 13 case, arguably the assessments violated the automatic stay. However, Curasi did not preserve in the Pretrial Stipulation any argument that the assessments were illegal because they violated the automatic stay. Accordingly, he has waived any such argument.

12. The Court need not decide whether tolling first commenced on the day Curasi filed his bankruptcy petition, or, instead, on the day the first tax return (on which an assessment was based) was due to be filed. Using either date, the assessments were timely.

§ 1961, and its costs of action. The Clerk is directed to enter judgment accordingly.

DONE AND ORDERED.