**In re Rachel FISHER, Debtor.**

**Bankruptcy No. 94 B 12537.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 1, 1996.

Mark Ryan, Assistant Corporation Counsel, Chicago, Illinois, for City of Chicago.

Jeanne Ann Pennebaker, Zalutsky & Pinski, Ltd., Chicago, Illinois, for debtor.

Craig Phelps, Standing Trustee, Chicago, Illinois.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

The motion now before the court raises the question of what property, if any, remains in a Chapter 13 estate after plan confirmation. Under its Municipal Code, the City of Chicago is authorized to take prescribed action against illegally parked cars. The debtor here, Rachel Fisher, asserts in the pending motion that by taking this action against her car, after she had filed a case under Chapter 13 of the Bankruptcy Code (Title 11, U.S.C.), the city violated Section 362(a)(3) of the Code. That provision, part of the Code's automatic stay, prohibits any act "to obtain possession of property of the estate or.... to exercise control over property of the estate." The city has responded that Fisher's car was not property of the estate at the time of the city's action, because a Chapter 13 plan had been confirmed in her case, and so the car was transferred from the estate to Fisher, through the "vesting" prescribed by Section 1327(b) of the Code. For the reasons set forth below, this court determines that the city's position does not reflect the best reading of the Code. Fisher's car, property of the estate at the beginning of her case, remained estate property after her Chapter 13 plan was confirmed, and hence the acts of the city, though performed after confirmation, did violate the automatic stay. Accordingly, the pending motion will be set for hearing.

### Jurisdiction

The pending motion to enforce the automatic stay is authorized by Section 362(h) of the Bankruptcy Code, and exists only in the context of a bankruptcy case. It is therefore a proceeding "arising under title 11" and "arising in a case under title 11," as set forth in 28 U.S.C. § 1334(b). *In re Wolverine Radio Co.,* 930 F.2d 1132, 1144 (6th Cir. 1991). The district court has jurisdiction over such proceedings, and may refer them to bankruptcy judges, pursuant to 28 U.S.C. § 157(a). By General Rule 2.33(a), the District Court for the Northern District of Illinois has made such a reference. Bankruptcy judges are given authority to enter appropriate orders and judgments in core proceedings arising in bankruptcy cases by 28 U.S.C.

§ 157(b)(1). The pending motion is a core proceeding. *Price v. Rochford*, 947 F.2d 829, 832 n. 1 (7th Cir.1991).

### Findings of Fact

The facts relevant to the city's defense are undisputed. Rachel Fisher filed a voluntary petition for relief under Chapter 13 on June 22, 1994. Her Chapter 13 plan, which accompanied the petition, was confirmed two months later, on August 16, 1994. Neither the plan nor the order of confirmation contained any provision regarding the vesting of property of the estate.

Fisher's bankruptcy schedules, as originally filed, did not list the City of Chicago as a creditor, but she amended the schedules to reflect a prepetition debt to the city arising from traffic tickets, and the city filed a proof of claim, based on this debt, on November 1, 1994. Thus, at least from that date, the city had notice of the bankruptcy. After Fisher had filed her case, the city issued ten more parking tickets to her, the last on March 30, 1995. Fisher again amended her schedules, to reflect these tickets, but the city did not file any claim so as to allow the postpetition tickets to be paid through the bankruptcy case. Rather, the city took direct enforcement action.

One of the city's ordinances sets out a detailed procedure for the enforcement of parking regulations. Chicago, Ill., Code ch. 9–100 (1990, as amended). Included in the ordinance are provisions allowing the immobilizing ("booting"), towing, and impounding of vehicles owned by any person who has accumulated five or more unpaid parking tickets. *Id.* § 9–100–120. The ordinance provides that the owner should be given notice at various stages, culminating with a notice that if an impounded vehicle "is not claimed within 30 days from the date of the notice, the vehicle may be sold or other otherwise disposed of" in accordance with an Illinois statute governing abandoned vehicles.

*Id.* § 9–100–120(f). Acting pursuant to this ordinance, the city booted, towed and ultimately disposed of Fisher's car, by crushing it, on June 7, 1995. The city took all of this action after the confirmation of Fisher's Chapter 13 plan, but without seeking a grant of relief from the automatic stay.

Fisher responded to the city's action by filing the pending motion to enforce the automatic stay, seeking damages for the loss of her vehicle. In an opposing memorandum, the city has taken the position, noted above, that the uncontested facts require denial of Fisher's motion. In its memorandum, the city also requested a hearing in the event the court finds that its action against Fisher's car did violate the automatic stay.

### Conclusions of Law

▮▮▮ Whether the City of Chicago violated the automatic stay in this case, and so may be subject to sanctions under Section 362(h) of the Bankruptcy Code, depends on whether Rachel Fisher's car was "property of the estate" at the time that the city booted, towed, and crushed it. Although the automatic stay established by Section 362(a) of the Code covers a wide range of conduct, the only provision of the stay that could apply to the city's actions is Section 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." [1]

*Conflicting understandings of the postconfirmation Chapter 13 estate.* At the time Rachel Fisher filed this bankruptcy case, Section 541(a) of the Bankruptcy Code created an estate, composed, among other things, of "all legal or equitable interests of the debtor in property as of the commencement of the case." That estate therefore included the car that Fisher owned at the time of filing, and Fisher did not remove the car from the estate by exempting it.[2] However, whether the car remained property of the

---

**1.** Other provisions of Section 362(a) prohibit actions to enforce prepetition claims against either the debtor or the debtor's property. However, these provisions are inapplicable here because the city was enforcing claims that arose after the filing of the petition. See *In re Petruccelli*, 113 B.R. 5, 6 (Bankr.S.D.Cal.1990), for a discussion of the various provisions of Section 362(a).

**2.** Under Section 522(b) and (*l*) of the Code, a debtor is allowed to exempt certain property from the estate by filing a list of that property. Fisher listed $1200 of the value of her car as exempt, as permitted by state law, but the car itself was not exempted.

estate after confirmation of Fisher's Chapter 13 plan depends on the extent to which Section 1327(b) of the Code, by "vesting" property of the estate in the debtor at the time of confirmation, transfers property out of the estate.[3]

That question has produced a large number of sharply divided opinions, with no consensus. The opinions divide roughly into three categories:

*(1) Estate termination.* According to one group of decisions, unless otherwise provided in the plan or order of confirmation, the vesting of property of the estate in the debtor at the time of confirmation, pursuant to Section 1327(b), removes all property from the estate, transfers that property to the debtor, and causes the estate to come to an end. *In re Nash,* 765 F.2d 1410, 1414 (9th Cir.1985) (alternative holding); *Shell Oil Co. v. Capital Financial Services,* 170 B.R. 903, 905–06 (S.D.Tex.1994); *Laughlin v. U.S. I.R.S.,* 98 B.R. 494 (D.Neb.1989), *aff'd,* 912 F.2d 197 (8th Cir.1990); *In re Toth,* 193 B.R. 992, 996–97 (Bankr.N.D.Ga.1996); *In re Lambright,* 125 B.R. 733, 734–35 (Bankr. N.D.Tex.1991); *In re Petruccelli,* 113 B.R. 5, 15–17 (Bankr.S.D.Cal.1990); *In re Walker,* 84 B.R. 888 (Bankr.D.C.1988); *In re Mason,* 51 B.R. 548, 550 (D.Or.1985); *In re Stark,* 8 B.R. 233, 234 (Bankr.N.D.Ohio 1981). Under these decisions, there is no "estate property" after confirmation, and the "debtor's property" includes not only the property that the debtor exempted pursuant to Section 522, but also all of the property that originally entered the estate under Section 541.

*(2) Estate transformation.* Under a second group of decisions, the vesting provided for by Section 1327(b) transfers to the debtor all (or most) of the property in the estate at the time of confirmation, but does not terminate the estate. Rather, an estate remains, composed of property in some way involved with the debtor's performance under the plan. *United States Postal Service v. Black (In re Heath),* 198 B.R. 298, 305 (S.D.Ind. 1996) (only postpetition earnings "devoted to plan payments" are property of the estate postconfirmation); *In re Leavell,* 190 B.R. 536, 540 (Bankr.E.D.Va.1995) (postconfirmation estate includes only postconfirmation earnings necessary to implement the plan); *In re Thompson,* 142 B.R. 961, 964 (Bankr. D.Colo.1992) (postconfirmation estate includes only funds actually paid to the trustee); *In re McKnight,* 136 B.R. 891, 894 (Bankr.S.D.Ga.1992) (postconfirmation estate consists of postpetition earnings of the debtor devoted to plan payments); *In re Ziegler,* 136 B.R. 497, 500 (Bankr.N.D.Ill.1992) (postconfirmation estate contains only the postpetition income of the debtor needed to fund the plan); *In re Root,* 61 B.R. 984, 985 (Bankr.D.Colo.1986) (postconfirmation estate composed of "[a]ny property that has been designated in the plan or order of confirmation as necessary for the execution of the plan, e.g. post-petition wages up to the amount of the plan payments each month"); *In re Adams,* 12 B.R. 540, 542 (Bankr. D.Utah 1981) (same). Under these decisions, there is "estate property" after confirmation, but most of the property of the estate at the beginning of the case becomes "debtor's property."

*(3) Estate preservation.* The third group of decisions holds that vesting under Section 1327(b) removes no property from the estate, and confirmation effects no change in the estate. *Security Bank of Marshalltown, Iowa v. Neiman,* 1 F.3d 687 (8th Cir.1993); *In re Henry,* 143 B.R. 811, 814 (Bankr. W.D.Pa.1992); *In re Aneiro,* 72 B.R. 424, 429 (Bankr.S.D.Cal.1987); *In re Clark,* 71 B.R. 747, 750 (Bankr.E.D.Pa.1987). Thus, all of

---

**3.** Section 1327(b) provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Section 1327(b) thus sets forth what is known in computer jargon as a "default" provision, defining the situation that occurs if no action is taken. Authority for action in this context is provided by Section 1322(b)(9), which allows a Chapter 13 plan to "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." Sections 1322(b)(9) and 1327(b) are correlative: a plan either provides for the vesting of estate property under Section 1322(b)(9), or the property vests in the debtor at confirmation under Section 1327(b). The meaning of "vesting" in the two provisions must therefore be the same, and Section 1327(b) is the focus of this opinion only because Fisher's plan did not provide for the vesting of estate property.

the property that entered the estate at the time the case was filed, pursuant to Section 541, continues to be "estate property."

As some decisions have noted, the statutory provisions bearing on the extent of the postconfirmation Chapter 13 estate are not consistent. *See, e.g., In re Lee,* 162 B.R. 217, 224 (D.Minn.1993) ("The Bankruptcy Code's provisions on the vesting of property in Chapter 13 cases appear to be somewhat contradictory."). In fact, the contradictions in the relevant provisions of the Bankruptcy Code are so profound that no purely semantic argument yields a satisfactory resolution to the question.

*Estate termination.* The first approach listed above—that vesting under Section 1327(b) ends the existence of the bankruptcy estate in Chapter 13 unless the plan or order of confirmation provides otherwise—has a strong basis. As it is ordinarily understood in a legal context, "vesting" implies the transfer or fixing of some legal right.[4] "Vesting" of estate property in the debtor at the time of confirmation, as specified by Section 1327(b), cannot mean the transfer of a mere right to possession of estate property to the debtor, because the debtor already has that right before confirmation.[5] And if "vesting" does not transfer possession, its apparent meaning would be to transfer ownership, thus granting to the debtor the ownership rights in the property that had previously belonged to the estate. Such a "plain" meaning is entitled to substantial weight. *United States v. Ron Pair Enter.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989); *Trustees of the Chicago*

*Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Leaseway Transportation,* 76 F.3d 824, 828 (7th Cir. 1996).

Moreover, Chapter 11 of the Bankruptcy Code contains a provision, Section 1141(b), whose language is identical to that of Section 1327(b), and the vesting of estate property in the debtor under Section 1141(b) is generally understood as transferring the property of the estate to the debtor and terminating the estate. *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Assoc.,* 997 F.2d 581, 587 (9th Cir.1993) (under Section 1141(b), "confirmation usually terminates the existence of the estate"); *In re T.S.P. Indus., Inc.,* 117 B.R. 375, 377 (Bankr.N.D.Ill.1990) (collecting authorities). Unless there is good reason for a contrary interpretation, Section 1327(b) should be interpreted in the same way. *See Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2503–04, 110 L.Ed.2d 438 (1990); *Dewsnup v. Timm,* 502 U.S. 410, 422, 112 S.Ct. 773, 780–81, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting) (each quoting authority for the "normal rule" that "identical words used in different parts of the same act are intended to have the same meaning").[6]

But terminating the Chapter 13 estate at the time of plan confirmation presents several problems:

First, Section 1306(a) provides that postpetition earnings and acquisitions of the debtor in a Chapter 13 case are property of the estate until the case is "closed, dismissed, or converted."[7] Pursuant to Section 1322(d), a

---

**4.** The dictionary definition of "vest" in a legal context, is "[t]o place (ownership, for example) in the possession of: *He vested his entire estate in his daughter."* American Heritage Dictionary 1345 (2d College ed. 1982). Or, as another dictionary defines it, "vest," in the legal context, means especially "to give a person a legally fixed immediate right of present or future enjoyment of (as an estate) <a deed that *vests* a life estate in the grantee and a remainder in his children>." Webster's Third New International Dictionary 2547 (1981).

**5.** The duties of the Chapter 13 trustee, set forth in Section 1302(b) specifically omit Section 704(1), the duty of a Chapter 7 trustee to "collect ... the property of the estate," and Section 1306(b) provides that the debtor shall "remain"

in possession of all of the property of the estate, unless the plan or order of confirmation provides the contrary, thus eliminating any duty to "surrender possession of property of the estate." S.Rep. No. 989, 95th Cong., 2d Sess. 140–41 (1978).

**6.** The few decisions that have interpreted Section 1322(b)(9), which allows a Chapter 13 plan to provide for the vesting of property of the estate, similarly appear to regard "vesting" as a transfer of ownership rights from the estate. *In re Lee,* 162 B.R. 217, 225 (D.Minn.1993), *aff'g* 156 B.R. 628 (Bankr.D.Minn.1993); *In re Beasley,* 22 B.R. 773, 774 (Bankr.W.D.Tenn.1982).

**7.** Section 1306(a) provides:

Chapter 13 case may remain in existence, after confirmation, for up to five years. During that time, Section 1306(a) would add the debtor's earnings and acquisitions to the estate, a process inconsistent with terminating the estate at confirmation.

Second, Section 1302(b) of the Code imposes on the Chapter 13 trustee the duty specified by Section 704(9) of the Code to "make a final report and file a final account of the administration of the estate with the court and with the United States trustee." If the trustee is to comply meaningfully with this duty, there must again be an estate in existence after confirmation.

Third, the continued existence of the estate postconfirmation is required to produce a reasonable result in the event that a Chapter 13 case is converted to another chapter of the Code after confirmation.

The extent of a Chapter 13 estate after conversion is now defined by Section 348(f), a provision recently added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994. Prior to this enactment, there was substantial uncertainty as to what property would be in the bankruptcy estate following conversion of a Chapter 13 case. One approach, reflected in *In re Bobroff,* 766 F.2d 797, 802–03 (3rd Cir.1985), determined property of the estate in the converted case according to the provisions that would have applied if the case had originally been filed under the new chapter. Thus, in a case converted from Chapter 13 to Chapter 7, the provisions of Section 1306(a), which add postpetition earnings and acquisitions to the estate, would not be applicable, and (for example) postpetition earnings of the debtor would not be property of the estate. This approach was rejected in *In re Lybrook,* 951 F.2d 136 (7th Cir.1991), based on a concern about bad faith conversion. As the court explained in *Lybrook,* 951 F.2d at 137–38, a Chapter 13 debtor could make minimal plan payments while using up the assets of the original bankruptcy estate,

and then convert to Chapter 7, asserting that the creditors were entitled only to whatever property from the original estate remained unexpended, with any newly acquired property—including windfalls from lottery winnings or inheritances—excluded from the new Chapter 7 estate. *Lybrook* avoided this result by holding that any property which entered the Chapter 13 estate—whether through Section 1306(a) or otherwise—remained property of the estate upon conversion.

In general, the 1994 Act accepts the *Bobroff* approach, by providing in Section 348(f)(1)(A) that after a conversion from Chapter 13 to another chapter of the Code, the estate consists of "property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." However, in the cases of bad faith conversion, Congress adopted *Lybrook,* providing in Section 348(f)(2) that "the property [of the estate] in the converted case shall consist of the property of the estate as of the date of conversion." If, after confirmation, there is no property in the Chapter 13 estate, this new provision would be absurd: it would provide, in cases of bad faith conversion of a Chapter 13 case after confirmation, that the estate in the converted case is composed of nothing.

The present case was filed prior to the effective date of the 1994 Act (October 22, 1994), and hence Section 348(f) does not directly apply here. However, the *Lybrook* decision, which would govern this case in the event of conversion, even more emphatically requires the continued existence of the Chapter 13 estate after confirmation to avoid absurdity. Under *Lybrook,* regardless of whether the conversion is in bad faith, the property of the Chapter 13 estate at the time of conversion becomes the estate property in the converted case, and so, if there is no estate in Chapter 13 after confirmation, any

---

Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

conversion of a postconfirmation Chapter 13 case would result in a converted case with nothing in the estate.

*Estate transformation.* The decisions of the middle ground—holding that Section 1327(b) causes most of the property of a Chapter 13 estate to become the individual property of the debtor, but that an estate remains to contain property connected with the debtor's plan performance—give the ordinary meaning to the "vesting" of Section 1327(b). Moreover, it continues an "estate" postconfirmation, into which at least some postconfirmation earnings and acquisitions can be placed, pursuant to Section 1306(a), and concerning whose administration the Chapter 13 trustee can report, pursuant to Sections 1302(b) and 704(9). However, this approach—like that of estate termination—creates an absurdity in the context of postconfirmation conversions. If the postconfirmation estate consists only of plan payments, or the earnings needed for plan payments, then, under Section 348(f)(2), there would be very little property available for the estate in a case converted in bad faith, and postpetition windfalls, specifically, would be excluded.

There is, however, a more basic problem with the estate transformation approach: its definition of the postconfirmation estate is arbitrary. Section 1327(b) excludes estate property from vesting in the debtor only if the plan or order confirming the plan provide otherwise. Thus, if a plan does not contain an express provision to the contrary, it would follow that *all* estate property vests in the debtor. The estate transformation decisions resist this conclusion by noting that each Chapter 13 plan must, under Section 1322(a)(1), "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." These decisions apparently assume that any property designated under Section 1322(a)(1) must be property of the estate. That assumption is incorrect. Section 1322(b)(8) expressly allows the claims of creditors in Chapter 13 to

be paid either from "property of the estate or property of the debtor," and so there is no reason why a plan could not use "debtor's property" for payments to creditors under a plan.[8] There is thus no necessary connection between plan payments and the estate. This may explain the lack of uniformity in the estate transformation opinions. Some (*e.g., Root* and *Adams* ) say that property "designated as necessary" for execution of the plan is in the postconfirmation estate, leaving open the question of what property fits within that category (arguably the debtor's house and car would be "necessary"); others (*e.g., Leavell* and *Ziegler* ) include in the postconfirmation estate only earnings of the debtor to the extent of plan payments, regardless of whether those earnings have been paid to the trustee; one (*Thompson* ) includes only payments actually made to the trustee. Any of these outcomes might be good policy, but none follows from the language of the Code.

*Estate preservation.* The final group of cases, holding that Section 1327(b) effects no change in the property of the estate, has the strong points of giving full effect to Section 1306(a) of the Code, allowing all postconfirmation income and acquisitions to become part of the estate, and of effectuating the duty of the Chapter 13 trustee to report on the administration of an estate. This approach, moreover, is the only one consistent with Section 348(f)(2), in that it would allow the full Chapter 13 estate—defined by Section 541 and augmented by Section 1306(a)—to become the estate in the new chapter after a bad faith conversion following confirmation of the debtor's plan. The problem with this approach is its failure to deal with the meaning of "vesting" under Section 1327(b), in violation of the rule of statutory construction that "a statute should not be construed in such a way as to render certain provisions superfluous or insignificant." *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 970–71 (5th Cir.1981); *Zeigler Coal Co. v. Kleppe,* 536 F.2d 398, 406 (D.C.Cir.1976).

*The purpose of the estate.* Because of the difficulties, outlined above, in determining

---

**8.** The legislative history confirms this understanding, noting that Section 1322(b)(8) "permits the plan to provide for payment of claims from property of the estate or from property of the debtor, such as exempt property." H.R.Rep. 595, 95th Cong., 1st Sess. 429 (1977).

the extent of the postconfirmation Chapter 13 estate in the face of conflicting individual statutory provisions, it is appropriate to consider the general purpose served by property of the estate in Chapter 13. *See Grogan v. Garner,* 498 U.S. 279, 287 n. 13, 111 S.Ct. 654, 659 n. 13, 112 L.Ed.2d 755 (1991) ("In determining the meaning of the statute, we look not only to the particular statutory language but to the design of the statute as a whole and to its object and policy"), quoting *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).

In Chapter 13, as otherwise in the Bankruptcy Code, the estate has two essential functions: (1) it provides the source of payments to creditors, and (2) it measures the amount of those payments. To assure that the estate fulfills these functions properly, a third feature is critical: the estate enjoys special protection from waste and preferential distribution.

*Measure and source of payment.* The first two aspects of the estate—as a source and measure of payment to creditors—is most obvious in Chapter 7. Parties in possession or control of property of the estate are required to deliver that property to the Chapter 7 trustee pursuant to Sections 541 and 542 of the Code; the trustee is required to liquidate the estate property pursuant to Section 704(1); and the creditors are paid the proceeds of the liquidated estate pursuant to Section 726, with the size of the estate determining the extent of the payments.

In Chapter 11 and 13 cases, the goal is for creditors to receive a higher rate of repayment than they would in Chapter 7, without liquidating the estate. In Chapter 11, the debtor may continue to use the property of the estate, under a plan that pays creditors out of earnings generated from the estate. See H.R.Rep. 595, 95th Cong., 1st Sess. 220–21 (1977) (discussing business reorganization generally). In Chapter 13, the rationale is that the debtor, being allowed to retain the property of the estate, will be willing and able, under a voluntary plan, to pay creditors from future personal earnings. *Id.* at 118 ("The benefit to the debtor of developing a plan of repayment under Chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets.")

Although the estate may therefore not be distributed directly to creditors in Chapters 11 and 13, it nevertheless retains its functions both as a source and measure of creditor payments. As a source of payments, the estate in Chapters 11 and 13 is a backup. If a plan cannot be successfully implemented, a case under Chapter 11 or 13 may be converted to one under Chapter 7, pursuant to either Section 1112 or Section 1307. After conversion, the estate is liquidated in Chapter 7 to provide payment to creditors.

And even where Chapter 11 and 13 plans are successfully implemented, the estate serves its function in measuring payments to creditors, through the "best interest of creditors" test. This test, set forth in Sections 1129(a)(7)(A)(ii) and 1325(a)(4), requires a minimum payment to creditors based on the estate's liquidation value. H.R.Rep. 595, 95th Cong., 1st Sess. 412–13, 430 (1977). Specifically, Section 1325(a)(4) provides, as a requirement for plan confirmation in Chapter 13, that each allowed unsecured claim receive under the plan payments with a value, as of the effective date of the plan, "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 on such date." This requires that the present value of the plan payments on each unsecured claim, as of the effective date of the plan, be at least equal to what a liquidation of the estate under Chapter 7, on that date, would have paid on the claim. *In re Smith,* 848 F.2d 813, 820 n. 7 (7th Cir.1988). Section 1129(a)(7)(A)(ii) imposes a similar requirement in Chapter 11. Thus, the extent of the estate on the effective date of a Chapter 11 or 13 plan, measures the sufficiency of plan payments.[9]

---

9. Although "effective date of the plan" is not defined by the Code, the phrase can only meaningfully apply to a date at or near plan confirmation, since plans are in no sense "effective" prior to confirmation. *Cf.* 2 Keith M. Lundin, Chapter

13 Bankruptcy § 5.29 at 5–76 (2d ed. 1994) (noting that it would offer consistency to define "effective date" as the filing date of the bankruptcy case, but that the Code uses the terms "date of petition" or "entry of order for relief"

*Protected property.*  The other aspect of the estate—its protected status under the Bankruptcy Code—is reflected in several Code provisions that serve to prevent waste and preferential distribution.

First, as noted at the outset of this discussion, the automatic stay, in Section 362(a)(3), prevents any creditor from taking action against property of the estate.  This feature of the automatic stay not only prohibits creditor action designed to obtain a larger than appropriate share of the estate, it also prevents action that might impair the ability of the estate to generate income or support the debtor.  *See Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 586 (9th Cir.1993) ("A principal purpose of [Section 362(a)(3)] is to preserve property for use in the reorganization of the debtor....").

Second, there are a series of provisions to assure that the property is not used inappropriately.

● A Chapter 7 trustee may only operate a business with the property of the estate after obtaining court authorization, and this authorization may only be given, pursuant to Section 721, "for a limited period ... consistent with the orderly liquidation of the estate."  In Chapters 11 and 13, a business may be operated without court authorization, but the person operating the business, whether the debtor or a trustee, must file periodic reports on the operation with the court and the United States trustee.[10]

● Even where the operation of a business with estate property is authorized, the estate property may not be used, sold, or leased outside the ordinary course of that business, except after notice and a hearing, pursuant to Section 363(b).  Thus, major sales of estate property by the trustee or debtor require notice and a hearing.[11]

● Estate property may not be abandoned without notice and a hearing, pursuant to Section 554 of the Code.[12]

● Under Section 364(a), where operation of a business is authorized, the estate may only enter into credit transactions without court approval if the transaction involves unsecured credit, obtained in the ordinary course of the business.  Other credit, including credit secured by estate property, can only be obtained with court authorization, after notice and hearing, pursuant to Section 364(b)–(d).[13]

● Professionals assisting in administering the estate may only receive payment from

---

when such an early date is intended).  Moreover, "effective date of the plan" must mean the time of confirmation in order to avoid unfairness to the debtor whenever assets of the estate decline in value between the time of the filing and plan confirmation.

**10.**  Section 704(8) imposes the duty of making periodic reports on a Chapter 7 trustee authorized to operate a business, and this duty is incorporated into both Chapter 11 (Section 1106(a)(1) and 1107(a)) and Chapter 13 (Section 1304(c)).

**11.**  The limited rights to use, sell or lease estate property, set forth in Section 363 of the Code apply to "trustees" in both Chapter 7 and 11.  *See* 11 U.S.C. § 103(a) (provision of Chapter 3 of the Code apply in cases under Chapter 7, 11, and 13).  The powers and duties of a Chapter 11 trustee, in turn, apply to the debtor in possession in Chapter 11, pursuant to Section 1107.  In Chapter 13, only the debtor may exercise these limited rights, pursuant to Section 1303.

**12.**  Under Section 554, abandonment, after notice and a hearing, is a power of the "trustee."  This power is not explicitly accorded to a debtor un-

der the provisions of Chapter 13, but the legislative history of Chapter 13 suggests that the enumerated powers of the debtor are not exclusive. 124 Cong.Rec. H11106 (daily ed. Sept. 28, 1978) S17423 (daily ed. Oct. 6, 1978); (remarks of Rep. Edwards and Sen. DeConcini) ("Section 1303 ... specifies rights and powers that the debtor has exclusive of the trustees.  The section does not imply that the debtor does not also possess other powers concurrently with the trustee.").  *See also In re Service,* 155 B.R. 512, 514–15 (Bankr.E.D.Mo.1993) (assuming, in dicta, that a Chapter 13 debtor, as a debtor in possession, has the right to abandon property under Section 554).  In any event, abandonment would require notice and hearing.

**13.**  Pursuant to Section 1304(b), Chapter 13 debtors who are engaged in business are explicitly authorized, exclusive of the Chapter 13 trustee, to enter into credit transactions subject to the limitations of Section 364.  Chapter 13 debtors who are not engaged in business are given no explicit right to enter into any credit transactions, but this may also be a right that they implicitly retain concurrently with the trustee.  See n. 12, *supra.*  Such a concurrent right, however, would still be subject to the limitations of Section 364.

estate property if the payment is approved by the court under Sections 330 or 331 of the Code. Section 330(a)(4)(B) limits the compensation payable to a Chapter 13 debtor's attorney to that which is "reasonable ... based on a consideration of the benefit and necessity of such services to the debtor...."

Finally, to the extent that any estate property is transferred in a manner inconsistent with the protections set out above, a trustee may usually avoid the transfer under Section 549 of the Code.

*The end of the estate.* The role of the estate in bankruptcy, outlined above, as a source and measurement of payments to creditors, protected from preferential transfers and waste, dictates that the estate should remain in existence until the payment rights of the creditors have been fixed with finality, and the need for the estate to pay these claims has ended. And, in fact, that is the way the estate has been treated in both Chapter 7 and Chapter 11 cases.

*Chapter 7.* In Chapter 7, the estate continues in existence until the trustee completes the distribution of the estate to creditors. *See* 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."). Thus, until the time that the claims of the creditors have been fixed and paid, the property of the estate remains in existence, protected from preferential transfers and waste.

*Chapter 11.* In Chapter 11, as noted above, the estate usually terminates with its vesting in the debtor at plan confirmation, pursuant to Section 1141(b). This is consistent with the situation in Chapter 7, because plan confirmation in a Chapter 11 case usually fixes creditors' right to payments and ends the need for the estate to serve as a backup to plan payments.

At plan confirmation, the debtor with an operating concern in Chapter 11 is generally discharged, pursuant to Section 1141(d), so that the creditors no longer have their prepetition claims, but only the payment rights accorded by the plan. Those payment rights must be consistent with the best interests test, based on the extent of the estate at the time of confirmation, and those rights are promptly fixed. A plan in Chapter 11 cannot be modified after "substantial consummation," pursuant to Section 1127(b), and "substantial consummation" is defined by Section 1101(2) to include the commencement of distribution under the plan. Thus, at confirmation, the estate in Chapter 11 has served its function in measuring the creditor's payment rights.

Moreover, after confirmation, there is no necessity for the estate to serve as a backup to payments under a plan. Confirmation in Chapter 11 comes only after (1) the creditors have been provided, pursuant to Section 1125, with a court-approved statement disclosing facts relevant to the debtor's operation under the plan, and (2) the creditors have been allowed an opportunity to accept or reject the plan, pursuant to Section 1126. A confirmed plan should therefore reflect informed creditor acceptance of whatever mechanisms are proposed to assure payment of their claims. Moreover, after plan confirmation, there is no right to convert a Chapter 11 case to a case under Chapter 7, and hence no need to deal with an estate once confirmation has occurred. *In re T.S.P. Indus., Inc.,* 117 B.R. 375, 378–79 (Bankr. N.D.Ill.1990) (holding that a Chapter 11 case generally should not be converted after plan confirmation).

With the need for an estate ended, the debtor under a confirmed Chapter 11 plan can treat what was formerly the property of the estate as though no bankruptcy had occurred. The termination of protection of the estate at confirmation is an accepted aspect of Chapter 11 practice. *See Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir.1991):

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court.... Formerly a ward of the court, the debtor is emancipated by the plan of reorganization.[14]

**14.** *See also In re H. White Constr. Co.,* 92 B.R. 656, 659 (Bankr.W.D.La.1988) (restrictions on

*Chapter 13.* The confirmation of a plan in Chapter 13 has a substantially different effect than in Chapter 11.

● At plan confirmation in Chapter 13, the debtor is not discharged. Rather, the usual Chapter 13 discharge is entered after completion by the debtor of all payments under the plan, pursuant to Section 1328(a). Thus, creditors of the estate retain their claims against the debtor and the debtor's property, and do not hold only a right to payment as defined by the plan.

● Moreover, the rights to payment accorded to creditors by a confirmed Chapter 13 plan are not fixed. Unlike Chapter 11 plans, which cannot be modified once distribution commences, a Chapter 13 plan may be modified "[a]t any time after confirmation of the plan but before completion of payments under such plan," pursuant to Section 1329(a) of the Code. That section further provides that modification may be sought by the debtor, by unsecured creditors, or by the trustee, and that the modification may, among other things, either reduce or increase payments to creditors. *See In re Witkowski,* 16 F.3d 739, 742 (7th Cir.1994) (discussing the requirements for plan modification in Chapter 13).

● Finally, unlike Chapter 11, in which there is no right to convert, Chapter 13 accords the debtor with an absolute right to convert the case to one under Chapter 7 "at any time," without court order, pursuant to Section 1307(a). *In re Shaffer,* 48 B.R. 952, 953 n. 2 (Bankr.N.D.Ohio 1985). Thus, even after plan confirmation, a debtor in Chapter 13 may unilaterally convert the case to Chapter 7.

These differences between Chapter 13 and Chapter 11 require that both functions of the estate—as a source and as a measure of payments to creditors—continue to be exercised after Chapter 13 plan confirmation.

*Source of payments.* The right of the debtor to convert a Chapter 13 case to one under Chapter 7, after plan confirmation, means that some estate must be available for liquidation, after plan confirmation, to serve as a reserve source for creditor payments. As noted above, in the discussion of problems with the estate termination decisions, Section 348(f) now defines the extent of the estate upon such a conversion: ordinarily, under Section 348(f)(1)(A), it consists of the property of the estate that existed at the time the case was filed, and is still in the possession or control of the debtor at the time of conversion; in situations of bad faith conversion, pursuant to Section 348(f)(2), the estate in the converted case "consist[s] of the property of the estate as of the date of conversion." Again, this last provision is only sensible if the estate exists after confirmation, without being diminished by the confirmation.

But more fundamentally, as long as liquidation under Chapter 7 is an alternative to payments under a confirmed Chapter 13 plan, the estate, however defined, must be protected. If all of the property of the estate is transferred to the debtor at confirmation, then the Chapter 13 debtor, just like a debtor in Chapter 11, would be "emancipated," and free to treat property of the estate as if no bankruptcy had ever occurred. Thus, after confirmation, a Chapter 13 debtor could (1) sell any unencumbered assets, (2) expend funds outside the ordinary course, (3) incur any kind of credit, including credit secured by unencumbered assets, and (4) pay legal fees to bankruptcy counsel—all without notice to any party involved in the bankruptcy and with no opportunity for a court hearing. If the debtor were operating a business, there would be no need to report on its operation. And finally, postpetition creditors, like the City of Chicago in the present case, would be free to enforce claims against the debtor's property, again without any notice to parties involved in the bankruptcy. The effect of such a lack of protection is that, in the event of a postconfirmation conversion—whether or not the conversion is in good faith—there may be a substantial loss of the estate assets that were available to pay creditor claims at the time of plan confirma-

credit transactions imposed by Section 364 do not apply to debtor under a confirmed Chapter 11 plan); *In re Tri–L Corp.,* 65 B.R. 774, 777–78 (Bankr.D.Utah 1986) (payment of fees by a Chapter 11 debtor to bankruptcy professionals, after plan confirmation, does not require court approval under Section 330).

tion.[15] This prospect is particularly troubling, because, in contrast to Chapter 11, creditors in Chapter 13 are provided with no disclosure regarding the financial condition of the debtor, and their approval is not required for plan confirmation under Section 1325.

In short, because of the continuing right of the debtor to convert a Chapter 13 case after plan confirmation, the role of the estate as a reserve source of creditor payments continues after confirmation, and so the estate itself must continue, subject to the protections of the Bankruptcy Code, undiminished by the confirmation.

*Measure of payments.* Similarly, because of the potential for modified Chapter 13 plans, the estate continues, after confirmation of an initial plan, to serve its role in measuring the appropriateness of payments to creditors, under the best interest test. See 11 U.S.C. § 1325(a)(4). Just as the "effective date" of an original Chapter 13 plan, for purposes of the best interest test, must be at or near the time that the plan is confirmed, so the "effective date" of a modified plan must be at the time of confirmation of the modified plan. Otherwise, the best interest test would impose an unfair burden

on any debtor whose assets declined in value from the time of the original confirmation.[16] However, since the best interest test under Section 1325(a)(4) requires a comparison between the amount of payments to be received under a plan and "the amount that would be paid ... if the estate of the debtor were liquidated under chapter 7," there must be an estate in existence at the time of plan modification.[17]

For the best interest test to apply meaningfully to modified plans in Chapter 13, the estate must continue after confirmation, without transferring the assets of the estate to the debtor. In this way, any modified plan, like any original plan, would have to provide for payments consistent with the liquidation value of the debtor's assets. If the value of the estate assets remained constant, the minimum payments under the best interest test would be the same for a modified plan as for the original. But if the value of the assets changed, minimum payments would be higher or lower for the modified plan. The best interest test itself remains viable.

Moreover, just as in the situation with conversion, the continuing role of the estate in Chapter 13, under the best interest test,

---

**15.** For example, consider the common situation of a Chapter 13 debtor who owns a home with substantial equity. If the home is not estate property after confirmation, the debtor can sell it, without the notice otherwise required under Section 363. Nothing would then prevent the debtor from expending the proceeds improvidently. And even if the proceeds were maintained, they would not be property of the estate on conversion under either branch of Section 348(f). The proceeds would not have been property of the estate at the time the case was filed, and would not be property of the estate at the time of conversion.

**16.** Consider, as an example, a Chapter 13 debtor whose original plan was premised on income from a stock portfolio. If the value of the stock and its dividends declined, the debtor would reasonably seek to propose a modified plan with lower payments to creditors. The value that the portfolio had at the time of the original confirmation should not be relevant to the best interest test in connection with the modified plan.

**17.** An example again illustrates the situation. Suppose that, at the time of original plan confirmation, a debtor in a Chapter 13 case had (1)

assets that could have been liquidated in Chapter 7 case for $100,000, (2) an annual disposable income of $50,000, and (3) unsecured debt of $250,000. This debtor could obtain confirmation of a plan calling for all of the disposable income ($50,000 annually) to be paid to the unsecured creditors over a three year period. This plan would satisfy the best interest test, because the present value of the payments under the plan, as of the effective date of the plan, would not be less than the $100,000 that would be paid on the unsecured claims in a Chapter 7 liquidation. (With a discount rate of 10%, the value of three annual payments of $50,000 is $124,340.) But then suppose that, one year after plan confirmation, having made the first $50,000 in payments on the $250,000 in unsecured debt, and having the same $100,000 in assets, the debtor has a change of jobs, and now has only $5,000 in annual disposable income to pay the remaining $200,000 in unsecured debt. If there is no estate after confirmation, liquidation of the debtor's estate in Chapter 7 would produce no payments for creditors, and so, consistent with the best interest test, the debtor could propose a modified plan that pays only $10,000 over the next two years, even though the total payments in the case, $60,000, would be far less than the liquidation value of the debtor's assets.

requires that the estate be protected. Unless the estate continues, undiminished by plan confirmation, that protection would not be available.

In the end, the differences between Chapter 13 and Chapter 11 indicate that confirmation in Chapter 13 cannot serve as the point of "emancipation" of the debtor. The debtor in Chapter 13 receives a discharge only at the conclusion of plan payments; the rights of creditors to payment remain subject to change throughout the pendency of the Chapter 13 plan; there is a need for the estate to remain in existence and protected throughout the Chapter 13 case.[18]

*Construction of the statute.* The conflicting language of the individual statutory provisions of the Bankruptcy Code should be read to accomplish the continuation of the estate after confirmation of a Chapter 13 plan. Thus, Section 1306(a) does add the debtor's postpetition earnings and acquisitions to the estate until the case is closed, dismissed or converted, according to its terms; Section 348(f)(2) creates a full estate in Chapter 7 upon the bad faith conversion of a Chapter 13 case after confirmation; and the Chapter 13 trustee, reporting on the administration of the estate, pursuant to Sections 1302(b)(1) and 704(9), has a meaningful task, including not only postpetition payments and distributions under the plan, but also such matters as approved sales and hypothecations of estate assets and the debtor's compliance with any requirement to file reports on the operation of a business.

On the other hand, Section 1327(b), with its provision regarding the "vesting" of estate property in the debtor at confirmation, cannot be seen as transferring to the debtor all or most of the property of the estate without producing an anomaly, repugnant to the rest of Chapter 13. Such a result, even if consistent with the usual meaning of the terms in question, should not be accepted. Thus, for example, in *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 454, 462–63, 109 S.Ct. 2558, 2567, 2571, 105 L.Ed.2d 377 (1989), the Supreme Court construed a term in the Federal Advisory Committee Act in a manner more restrictive than its usual dictionary definition, based on the Act's overall purpose. *Cf. Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.,* 960 F.2d 1339, 1345 (7th Cir. 1992) ("[T]he general rule honored even by interpretive literalists is that if a literal reading would produce an absurd result the interpreter is free (we would say compelled) to depart in the direction of sense.")

Since "vesting" may mean a fixing of rights, as well as a transfer, Section 1327(b) should be read, consistent with the rest of Chapter 13, as fixing the debtor's right to possess and deal with estate property after confirmation. Thus, for example, Section 1327(b) affirms that the Chapter 13 debtor has the authority, after plan confirmation, to propose a sale or encumbrance of estate property, subject to Sections 363 and 364 of the Code, even though a trustee serves under the plan. The estate, however, remains intact after confirmation.[19]

■ *Application of the statute.* As applied to the situation of the present case, the interpretation of the Bankruptcy Code set forth above requires that the court reject the defense offered by the City of Chicago to the pending motion. Rachel Fisher's car continued to be property of the estate after her Chapter 13 case was confirmed, and by tak-

18. This understanding of Chapter 13 places no extraordinary administrative burden on the Chapter 13 debtor. It merely requires that the debtor treat estate property after confirmation in the same way that it was treated before confirmation. Much of the property that a Chapter 13 debtor uses in daily life will likely be exempted from the estate. And, as set forth above (at notes 11–13), Chapter 13 debtors have authority under Section 1303 to deal with estate property in the ordinary course, which should include expending estate property for ordinary living expenses. Only extraordinary purchases, sales, and credit transactions should require court approval. Fi-

nally, if there is any question about the scope of the debtor's authority to act without court approval following confirmation, it can be addressed in the debtor's plan.

19. The same understanding of "vesting" would apply in Section 1322(b)(9). See n. 3, above. Section 1322(b)(9) should thus be read to allow a Chapter 13 plan to fix in the debtor the right to deal with estate property, subject to the protections of the Bankruptcy Code, or to provide that some other entity will exercise that right.

ing action to obtain possession of the car, the city violated the automatic stay as defined by Section 362(a)(3). A creditor in the position of the city is required to obtain relief from the stay, pursuant to Section 362(d), prior to enforcing its rights against estate property. Perhaps the city can establish cause for relief from the stay retroactively, through the annulment of stay that Section 362(d) authorizes. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984) ("annulling" the automatic stay under Section 362(d) implies retroactive relief). Otherwise, relief under Section 362(h) may be appropriate. *Price v. United States*, 42 F.3d 1068, 1071 (7th Cir. 1994) (violation of the automatic stay after notice of bankruptcy establishes willfulness under Section 362(h)).·

## Conclusion

For the reasons set forth above, the defense of the City of Chicago to debtor's motion to enforce the automatic stay is denied, and the motion will be set for hearing.