In re Thomas L. KOLENDA and
Lisa M. Kolenda, Debtors.

Michael J. ANNESE, Appellant,

v.

Thomas L. and Lisa M. KOLENDA,
Appellees.

No. 1:97–cv–409.
Bankruptcy No. HG–94–81748.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 18, 1997.

Paul A. Pianto, Paul Pianto Law Offices, Owosso, MI, for appellant.

Daniel B. Gess, Gess, Gess & Miller, PC, Grand Rapids, MI, for appellees.

## OPINION

HILLMAN, Senior District Judge.

This is an appeal from a bankruptcy court decision finding appellant Michael Annese in contempt of court for willful violation of the automatic stay and awarding sanctions to debtor. Upon review, I affirm the bankruptcy court's decision.

## BACKGROUND

Thomas J. and Lisa M. Kolenda filed a petition for bankruptcy under Chapter 13 on or about April 15, 1994, and an order and notice of stay was entered. On June 28, 1994, the bankruptcy court confirmed the debtors' reorganization plan.

A year after their plan was confirmed, in October 1995, debtors acquired a 1989 Oldsmobile Cutlass. Sometime later, the debtors found themselves short of cash and responded to an advertisement placed by appellant,

offering loans to persons who had filed for bankruptcy. Appellant Annese loaned the debtors a net of $1,316 on a face amount of $1,500 using their car as collateral. Debtors signed what purported to be a lease agreement, by which debtors retained possession of the car and paid Annese $133.56 every two weeks for six months. At the end of the lease, debtors could purchase the car back for $1,500. Appellant had debtors sign the title to the car, but the debtors did not date it or declare the odometer reading. Appellant allegedly represented to debtors that he would hold the title only as security. Despite the construction of the arrangements, debtors claim that they understood appellant was only to have a lien on their vehicle.

When debtors fell behind in their payments, appellant demanded payment. Debtors contacted their bankruptcy attorney, who, in April 1996, sent a letter to appellant advising that he was in violation of the bankruptcy court's stay order and that his loan arrangements were usurious. Debtors' attorney warned appellant about contacting debtors to collect the debt and advised appellant not to attempt to repossess the car because he had no basis to do so under Michigan or federal law.

In May 1996, shortly after receiving the letter from debtors' attorney, appellant filed the change of title with the State of Michigan. In December 1996, he repossessed the car and sold it. After settlement attempts were fruitless, debtors filed a motion to show cause why appellant should not be held in contempt for a willful violation of the stay. On January 7, 1997, the bankruptcy court found appellant in contempt. Following a second evidentiary hearing on January 21, 1997, the court awarded damages in the amount of $7,316 for the lost value of the car, the costs incurred for alternative transportation, the lost earnings of the debtors because of lack of transportation, and punitive damages.

## DISCUSSION

On appeal, appellant raises a single issue. He contends that the bankruptcy court erred by finding him in contempt for willful violation of the stay because the property at issue was not part of the bankruptcy estate and therefore not covered by the stay.

The automatic stay provision of 11 U.S.C. § 362(a) prohibits, among other things, the following:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate. . . .

The court concluded that by obtaining debtors' possessory interest in the car, which was property of the estate, appellant had willfully violated the stay order. Appellant contends, however, that the car was not property of the estate and therefore his conduct did not violate the stay.

Whether appellant violated the provisions of the automatic stay in this case depends on whether the car was "property of the estate" at the time appellant repossessed it. The issue involves a conflict between two provisions of the bankruptcy code. Section 1306 of Title 11 of the United States Code provides that:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 21 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

On its face, section 1306(a) suggests that the car, acquired after commencement of the case but before the case is closed, is "property of the estate." As some courts have observed, however, the provision may be in conflict with section 1327(b), which provides:

(b) Except as otherwise provided in the plan or the order confirming the plan, the

confirmation of a plan vests all of the property of the estate in the debtor.

They reason that if "vesting" under section 1327(b) means that ownership of all property in the estate is transferred to debtor at confirmation, once a plan is confirmed, no property remains in the estate under section 1306.

As many courts have observed, sections 1327(b) and 1306(a) are not "models of clarity." *See, e.g., Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687, 689 (8th Cir.1993). The courts have taken three approaches in reconciling the language. *See In re Fisher*, 198 B.R. 721, 724–25 (Bankr. N.D.Ill.1996) ("*Fisher*"), *reversed on other grounds*, 203 B.R. 958 (N.D.Ill.1997) ("*Fisher II*").

Under the first approach, the "estate termination" approach, courts have concluded that after confirmation, ownership of all property in the estate vests with the debtor and the estate ceases to exist. *See, e.g., In re Toth*, 193 B.R. 992, 996 (Bankr.N.D.Ga. 1996); *In re Petruccelli*, 113 B.R. 5 (Bankr. S.D.Cal.1990); *In re Walker*, 84 B.R. 888 (Bankr.D.D.C.1988). This interpretation favors post-petition creditors because debtors may dispose of and encumber their property as they see fit and post-petition creditors may go after that property without running afoul of the stay.

The second interpretation, the "estate transformation" approach, takes a middle ground. Courts adopting this approach have concluded that, after confirmation, only plan-essential property remains in the estate, including that part of post-confirmation earnings necessary to fund the plan. *See e.g., In re Ziegler*, 136 B.R. 497, 500 (Bankr.N.D.Ill. 1992); *In re Root*, 61 B.R. 984 (Bankr. D.Colo.1986). On this approach, the courts conclude that the property in the estate at the time of confirmation vests with the debtor without terminating the estate. Instead, post-confirmation earnings and acquisitions become estate property to the extent necessary to fund the plan.

Under the third interpretation, the "estate preservation" approach, vesting under section 1327(b) is understood to remove no property from the estate. *See In re Clark*, 69 B.R. 885, *amended on reconsideration in part*, 71 B.R. 747 (Bankr.E.D.Penn.1987); *Fisher I*, 198 B.R. 721. Under this view, the ownership interest that is vested at confirmation is limited to the degree the property is required for successful completion of the plan. *See In re Aneiro*, 72 B.R. 424, 429–30 (Bankr.S.D.Cal.1987); *In re Price*, 130 B.R. 259, 269 (N.D.Ill.1991). "Plainly there is no firm line which divides the property of the debtor and property of the estate once a Chapter 13 plan has been confirmed. Rather, the two must be treated as one and the same, at least to the extent that the debtor's post-confirmation income or other property is committed to implementation of the plan." *Price*, 130 B.R. at 269.

■ I agree with the bankruptcy court that the third approach, the estate preservation approach, makes the most sense of the code provisions as a whole. By the clear terms of § 1306(a), confirmation is not relevant to determining what property is part of the estate. *Fisher I*, (citing *In re Aneiro*, 72 B.R. 424, 429 (Bankr.S.D.Cal.1987)). The only relevant events are "dismissal, closing or conversion of the case." *Id.* "If Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision." *Aneiro*, 72 B.R. at 429. *See also Security Bank*, 1 F.3d at 691.

■ Those courts adopting the estate termination approach have concluded that, unless "vesting" means more than possession, the provision is superfluous. They base this conclusion on the fact that another provision of the code already confers possession of the property on the debtor. *See* 11 U.S.C. § 1306(b) ("Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."). Because ordinary principles of construction suggest that a statute "should not be construed in such a way as to render certain provisions superfluous or insignificant," *Fisher I*, 198 B.R. at 727, these courts conclude that the vesting provision must transfer full ownership to the debtor, thereby terminating the estate.

I am not persuaded by this reading of the statute. "Vesting" may mean more than mere possession without meaning ownership. The term "vesting" is not necessarily synonymous with a transformation of the estate property into property of the debtor. *See Security Bank*, 1 F.3d at 691. Vesting instead has the ordinary meaning of conveying some immediate right in property. *See Fisher I*, 198 B.R. at 724 & n. 4; Black's Law Dictionary 1401 (5th ed.1979) ("vest" is defined as "to give an immediate fixed right of present or future enjoyment.... To clothe with possession."). One could understand the term to return to the debtor something more than possession—i.e., full ownership rights in the property except vis-a-vis the interest of the estate in fulfilling the plan. *See Fisher I*, 198 B.R. at 733. *See also Aneiro*, 72 B.R. at 429–30 ("The ownership rights of the debtor in the property of the estate are limited at least to the extent that the property is committed to successful performance under the plan."). Alternatively, "[s]ince "vesting" may mean a fixing of rights, as well as a transfer, Section 1327(b) should be read, consistent with the rest of Chapter 13, as fixing the debtor's right to possess and deal with estate property after confirmation.... The estate, however, remains intact after confirmation." *Fisher I*, 198 B.R. at 733.

■ Moreover, even reading § 1327(b) to transfer mere possession of the property at worst renders § 1327(b) superfluous, to the extent debtor already has rights to possession. *See* 11 U.S.C. § 1306(b). In contrast, an expansive reading of the vesting provision of § 1327(b) that would end the estate is directly contrary to the express language of § 1306(a), which declares all post-petition property and earnings to be part of the estate until one of three events occurs— events which do not include confirmation. In other words, interpreting the vesting provision to transfer full ownership rights may avoid possible redundancy, but directly conflicts with the language of § 1306(a). It flies in the face of ordinary principles of statutory construction to disregard plain statutory language simply to avoid possible redundancy. *See Fisher*, 198 B.R. at 733 ("[V]esting ... cannot be seen as transferring to the debtor all or most of the property of the estate without producing an anomaly, repugnant to the rest of Chapter 13."). *See also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (preference for avoiding redundancy should not control interpretation of a statutory scheme; legislative provisions may be unintentionally or intentionally repetitive).

■ Further, concluding that the vesting provision of § 1327(b) does not affect the property in the estate is consistent with the purposes of the bankruptcy estate. Under the bankruptcy code, "the estate has two essential functions: (1) it provides the source or payments to creditors, and (2) it measures the amount of those payments. To assure that the estate fulfills these functions properly, a third feature is critical: the estate enjoys special protection from waste and preferential distribution." *Fisher I*, 198 B.R. at 728. Chapter 13 as distinct from Chapter 7 provides the potential for creditors to achieve a higher rate of return through a plan of repayment from proceeds generated by the estate. It simultaneously provides the debtor with the means to retain his assets. If the plan cannot be successfully implemented, however, the assets in the estate provide a source of payment to creditors upon conversion under § 1307. To conclude that § 1327(b) destroys the estate at the time of confirmation or empties it of its assets removes the availability of these assets should conversion be necessary. *Fisher I*, 198 B.R. at 728. It further hinders the implementation of the plan to the extent that the plan depends on the use of the assets, such as a car. *Id.* at 729. In addition, understanding § 1327(b) as eliminating the estate renders the trustee's role superfluous and would provide no protection from waste and preferential distribution of the debtor's property. *See Fisher I*, 198 B.R. at 728; *Root*, 61 B.R. at 985. *See also Security Bank of Marshalltown*, 1 F.3d at 691.

Appellant places great weight on the policy goal of allowing Chapter 13 debtors to obtain necessary credit, and on the concomitant need for protection for post-confirmation creditors. However, these policy concerns

can be met without sacrificing the central policies behind Chapter 13. Post-confirmation creditors are capable of discovering the existence of a bankruptcy filing before extending credit. In particular, creditors like appellant, who are aware of the existence of the stay but seek to avoid it, may apply to the bankruptcy court to lift the stay. As some courts have noted, the burden of proof to lift the stay should not be great. *See Clark,* 71 B.R. at 750. In any event, to allow post-confirmation creditors to undermine the ability of pre-confirmation creditors to be paid would place creditors who were or should have been aware of debtors' financial difficulties in a better position than those who may have extended credit before debtors' precarious financial position arose. On balance, therefore, I believe the policies behind the bankruptcy code support the view that § 1327(b) does not affect the property in the estate.

■ However, regardless of whether confirmation transfers the property then in the estate to the debtor, I am not persuaded that a direct conflict between the provisions of § 1306(a) and § 1327(b) exists on the facts of this case. Section 1327(b) appears to address the vesting of property that is in the estate *at the time of the confirmation. See Ziegler,* 136 B.R. at 501 ("Only defined property of the estate then extant can so revest."); *Fisher II,* 203 B.R. at 962. Here, the car at issue was not acquired until after the confirmation of a plan. Accordingly, section 1327(b) does not appear to say anything about this particular property. Section 1306(a), in contrast, clearly provides that post-petition earnings and acquisitions are part of the estate. As a result, under the facts of this case, no direct tension exists between § 1327 and § 1306.

In order to conclude that property acquired post-confirmation is not part of the estate, I must reach one of two conclusions. First, I could accept the reasoning of the courts adopting the estate termination approach and conclude that, despite the clear language of § 1306(a), post-confirmation acquisitions may never be part of the estate because the estate has terminated. As I previously have stated, such an interpretation is both at odds with the language of § 1306(a) and is an unprecedented interpretation of "vesting."

Alternatively, I could adopt the reasoning of some courts taking the estate transformation approach and conclude that the estate is not terminated at the time of confirmation, but that it includes only such portion of post-confirmation earnings and acquisitions necessary to fund the confirmation plan. However, no textual basis exists for distinguishing between post-confirmation property that is "necessary" and that which is "not necessary" to funding the confirmation plan, and courts have differed widely concerning how broadly "necessary" should be construed. *Fisher II,* 203 B.R. at 963 (citing cases). Moreover, such an interpretation requires the court to view § 1327(b) as repeatedly vesting post-confirmation property whenever such property is acquired. Such a reading, however, unduly strains the language of § 1327(b), which suggests that vesting is a one-time event that occurs only at the time of confirmation. *See* 11 U.S.C. § 1327(b) ("[T]he confirmation of a plan vests all of the property of the estate in the debtor."); *Ziegler,* 136 B.R. at 501 (vesting is a one-time event); *Fisher II,* 203 B.R. at 963 (same).

I therefore conclude that even if the property in the estate at the time of confirmation is transferred to the debtor under § 1327(b), the estate continues to exist, and property acquired post-confirmation is added to the estate until the case is "closed, dismissed, or converted." *Fisher II,* 203 B.R. at 962. As a result, the car at issue, which was acquired post-confirmation, was property of the estate at the time appellant repossessed it. Accordingly, appellant's actions violated the automatic stay provision and subjected appellant to the sanctions of the bankruptcy court.

### CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court imposing sanctions for willful violation of the automatic stay is **AFFIRMED.**